**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ARIEL LAND OWNERS, INC.,

      Plaintiff,

         v.

LORI DRING and NANCY ASARO,

      Defendants/Counterclaim Plaintiffs,

         v.

ARIEL LAND OWNERS, INC.,
KARL R. IFFLAND and
ALICE L. IFFLAND, et al.,

      Counterclaim Defendants.

CIVIL ACTION NO. 3:01-CV-0294

(JUDGE CAPUTO)

## MEMORANDUM

      Presently before the Court are two motions for partial summary judgment (Docs. 120, 124).  For the reasons set forth below, Counterclaim Defendants Karl R. and Alice L. Iffland, et al. and Plaintiff/Counterclaim Defendant Ariel Land Owners, Inc.'s (hereinafter collectively known as "Plaintiffs") motion (Doc. 120) will be granted in part and denied in part. Defendants/Counterclaim Plaintiffs Lori Dring and Nancy Asaro's ("Defendants") motion (Doc. 124) will be granted in part and denied in part.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## PROCEDURAL HISTORY

      On May 17, 1999, Ariel Land Owners, Inc. ("ALO") brought an action against the Defendants in Pennsylvania Court of Common Pleas to quiet title of the waters of Lake Ariel and Mud Pond and the stream or channel connecting the same ("Disputed Water

Area"). (Doc. 121-1 at 3)  On September 24, 1999, Defendants filed an answer. (Doc. 121-1 at 4.)  ALO filed an amended complaint shortly after January 26, 2001. *Id.*

On February 15, 2001, Defendants removed the case to Middle District of Pennsylvania.  (Doc.1.)  On March 1, 2001, Defendants filed an answer to the amended complaint along with a counterclaim against ALO.  (Doc.2.)  ALO's March 22, 2001 motion to remand to state court was denied.  (Doc. 16.)  Defendants' motion to file an amended and supplemental counterclaim was granted on May 16, 2002. (Doc. 45.) Defendants sought this amendment based on their new acquisition of a strip of property running along the West Shore of Lake Ariel.  (Doc. 47.)

On May 22, 2002, Defendants filed a motion to file a second amended counterclaim seeking to add West Shore Landowners as indispensable parties.  (Doc. 46)  While this motion was pending, on June 19, 2002, ALO and West Shore landowners filed a separate action to quiet title in state court.  (Doc.150 at 5.)  On July 14, 2002, Defendants filed a motion to enjoin these proceedings.  *Id.*  On December 12, 2002, ALO and West Shore landowners filed a second motion to remand the case to state court (Doc. 80.) Which was granted on January 28, 2003.  (Doc. 83.)  All other pending motions were denied as moot. *Id.*

On February 26, 2003, Defendants filed an appeal (Doc.85.) and on January 7, 2004, the United States Court of Appeals for the Third Circuit reversed the order granting the remand (Doc. 89.).  On August 2, 2004, the Court entered an order enjoining ALO and West Shore landowners (Doc. 96.).  On August 3, 2004, Defendants were allowed to file a second amended and supplemental counterclaim to which ALO and West Shore landowners filed an answer to on August 18, 2004 (Doc. 99.).

2

On February 7, 2005, both Defendants and ALO and West Shore landowners filed a motion for partial summary judgment to the opposing parties' respective claims (Docs. 120, 124).  Oral arguments were heard from both sides prior to this opinion.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  A fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *See id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that 1) there is no genuine issue of material fact and 2) she is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d Ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

3

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.  The court need not accept mere conclusory allegations or denials taken from the pleadings.  *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

**1.     Plaintiffs' Motion**

Plaintiffs move for summary judgment with respect to the claims in Counts II, IV and V of Defendants' Second Amended and Supplemental Counterclaim.  These claims together ask the Court to grant Defendants the right to use the Disputed Water Area for the following reasons: (1) <u>Count II</u>: "Defendants and their predecessors in title have acquired appurtenant rights to the... [Disputed Water Area] . . . by virtue of Defendants' ownership of a portion of the bed of Lake Ariel and Mud Pond."  (Doc. 46 ¶ 21.) Additionally, due to "the operation of saw mills and logging businesses which used the adjacent waters of Lake Ariel and Mud Pond and the stream or channel connecting the

4

same to transport harvested trees to saw mills located or near Lake Ariel or Mud Pond at a time prior to December 13, 1859." (Doc 46 ¶ 22.); (2) <u>Count IV</u>: "Defendants and their predecessors in title have acquired appurtenant rights to use the . . . [Disputed Water Area] . . . by virtue of prescriptive rights." (Doc. 46 ¶ 28).  Defendants' predecessors allegedly used the Disputed Water Area to fish, boat, swim and trap.  (Doc. 46 ¶ 34.)  They also claim to have erected a seventy-five (75) foot fence to use for their working farm.  (Doc. 46 ¶ 30-33.)  This is all, allegedly, to have been done for more than twenty-one (21) years in a continuous, open, notorious and adverse manner. (Doc.46 ¶ 30-35.); and (3) <u>Count V</u>: "Plaintiff's artificial raising of the elevation of the waters of Lake Ariel and Mud Pond and the resulting trespass on Defendant's property [elevation covered the portion of land owned by Defendants] was accomplished without the consent of Defendants or their predecessors in title and is unauthorized, continuing wrongful trespass on Defendant's property."  (Doc. 46 ¶ 54-55.)

Plaintiffs' motion for summary judgment will be granted as to Count II.  Plaintiffs' motion for summary judgment will be granted as to Count V only in respect to the question of whether owning a small strip of land underneath or land bordering the Disputed Water Area allows Defendants full use of the Disputed Water Area.  Plaintiffs' motion for summary judgment will be denied as to Count IV and the rest of Count V.

### a.    Counts II and V - Appurtenant Rights/Western Shore Strip

Counts II and V deal with whether ownership of property bordering the lake and ownership of a part of a lake bed gives the owner the right to use and enjoy the lake. Count II deals with the Defendants' claim that they have acquired appurtenant rights to

use the Disputed Water Area by virtue of ownership of a portion of the bed of Lake Ariel.

Count V deals with Defendants' ownership of a parcel of land bordering the western

shore of Lake Ariel and Mud Pond ("Western Shore Strip").  They acquired this land in

2001 via two quit claims deeds: (1) two-third (2/3) undivided interest from Rensselaer

Polytechnic Institute and (2) one-third (1/3) undivided interest from Wells College.  The

Western Shore Strip lies between the high(est) water mark and the natural water mark at

certain points, which means that during high water periods, the Western Shore Strip is

under water and considered part of the lake bed.  During low water periods, the Western

Shore Strip is just a border to the Disputed Water Area.  Defendants contend that the

submerging of the Western Shore Strip is due to Plaintiffs' artificial elevation of the

Disputed Water Area.  Therefore, Defendants argue that they cannot enjoy the

submerged Western Shore Strip without using the Disputed Water Area.

     The law is clear that mere ownership of a strip of land bordering the lake does not

give Defendants' the right to use the entire lake.  In *Miller v. Lutheran Conference and*

*Camp Ass'n,* 200 A. 646, 650 (Pa. 1938) (citations omitted), the court stated:

> Ordinarily, title to land bordering on a navigable stream
> extends to low water mark subject to the rights of the
> public to navigation and fishery between high and low
> water, and in the case of land abutting on creeks and
> non-navigable rivers to the middle of the stream, but in
> the case of a non-navigable lake or pond where the land
> under the water is owned by others, no riparian rights
> attach to the property bordering on the water, and an
> attempt to exercise any such rights by invading the
> water is as much a trespass as if an unauthorized entry
> were made upon the dry land of another.

Plaintiffs' motion for summary judgment on Count II will be granted as to Defendants'

claim that they have acquired appurtenant rights solely based on their ownership of

bordering land.

The law is also clear that ownership of a portion of the waterbed does not give

Defendants the right to utilize the entire body of water. *See Mountain Properties, Inc. v.*

*Tyler Hill Realty Corp.,* 767 A.2d 1096 (Pa. Super. Ct. 2001) (refusing to "expand the

long-standing common law rule").  Plaintiffs' motion for summary judgment on Count V

will be granted as to Defendants' claim that they have rights to use the Disputed Water

Area based on their ownership of Western Shore Strip.

Insofar as Defendants' Count V argument rests on the fact that their ownership of

Western Shore strips extends their deed to the center of the stream, summary judgment

will be denied. *Id.*

### b.    Counts II and IV - Prescriptive Easement Rights

Counts II and IV put forth a theory of appurtenant rights based on prescriptive

easement.  Count II deals with Defendants' claim that they have acquired appurtenant

rights to use the Disputed Water Area by virtue of their predecessor's operation of

sawmill and logging businesses prior to 1859. (Doc. 46 ¶ 22.)  Mr. Swingle, however,

testified in his deposition that his father did not use the lake for the operation of sawmill

and logging businesses:

> Q. But you have no knowledge of these trees that your
> father cut down on the west side of Mud Pond ever
> being taken across the lake down to the sawmill?
>
> A. No, No.  Didn't travel on the lake.  He took them
> down – I think that was Route 90, years ago, 191.  And
> then Lake Ariel, I think it was Charlie Schaffer.
>
> Q. So we can agree then, that your father did not make
> any use of the lake for his logging?

A. Oh, no.  He used to help them cut the ice. But
everybody that had a sled helped cut the ice . . . .

(Doc. 25-5 at 11.)

Count IV deals with Defendants' claim that they have acquired appurtenant rights

to use the Disputed Water Area by virtue of their predecessor's prescriptive easement

rights.  Summary judgment will be granted as to Count II but will be denied as to Count

IV.  The issue of prescriptive easement argued in Count IV is addressed in depth in

section 2.a of this memorandum.

**2.      Defendants' Motion**

Defendants filed a motion for partial summary judgment on two issues: (1) whether

Defendants have the right to use the Disputed Water Area and (2) whether Defendants

are barred from asserting their claims due to res judicata.  The Court will address each

issue in turn.

**a.      Prescriptive Easement Rights**

Defendants argue that judgment should be granted in their favor with respect to

their claim that they have all rights appurtenant to use the Disputed Water Area.

Defendants contend that  their predecessor has acquired this use by prescriptive

easement and has conveyed this right to them by deed.  The Court agrees in part and

disagrees in part.

**i.      Defendants' Predecessors'  Acquisition Of A Prescriptive
          Easement**

Defendants claim that their predecessor, Mr. Swingle, acquired prescriptive

easement rights to use the Disputed Water Area.  "A prescriptive easement is created by

adverse, open, continuous, notorious and uninterrupted use of land for twenty-one years." *Martin v. Sun Pipe Line Co.,* 666 A.2d. 637, 640 (Pa. 1995) (citations omitted).

Defendants present deposition testimony of Mr. Swingle as evidence that Mr. Swingle and his family have used the Disputed Water Area for over seventy-nine (79) years in an adverse, open, continuous, notorious and uninterrupted way.  According to Mr. Swingle's testimony, he and his father had a farm for over 79 years on the land that is now owned by Defendants.  During their ownership, they claim to have used the Disputed Water Area for the following activities: (1) Mr. Swingle and his father constructed a fence that went seventy-five (75) feet into the adjacent waters in the channel between Lake Ariel and Mud Pond for the purpose of watering their livestock and crops; (2) Mr. Swingle fished, boated and trapped in the Disputed Water Area; (3) Mr. Swingle's father cut and hauled ice from Lake Ariel; and (4) Mr. Swingle's son fished and boated in the Disputed Water Area until 1996.  (Doc. 150 at 17.)

Plaintiffs argue that none of the activities engaged in by Mr. Swingle and his family was regular and continuous.  Plaintiffs offer deposition testimony of Mr. Gordon Florey which disputes Mr. Swingle's testimony. (Doc. 150 at 17-19.)  The frequency of watering the cows is disputed. (Doc. 125-6 at 19.)  Furthermore, Mr. Florey stated in his Verified Statement, that the taking of ice from Lake Ariel ceased sometime before 1940 and this use was not adverse since the ice business at that time was operated by the Pennsylvania Ice Company under an agreement. (Doc. 151-1 ¶ 8.)   As for the trapping in the lake, Plaintiffs point out that Mr. Swingle himself stated that he only did this in the month of December and stopped in the late 1940's.  (Doc. 125-5 at 17.)  Furthermore, Mr. Swingle testified that there was an incident where his son was told by representatives

of Plaintiffs to leave the lake when his boat ventured onto Lake Ariel.  (Doc.125-5 at 9.)

"The nature of the easement, whether it is seasonal, periodical, or for all periods of the year, the frequency and the extent of the user, its definiteness, and its location in city or rural districts are important factors in a determination of whether an easement exists and exactly what rights have been acquired thereunder."  *Shaffer v. Baylor's Lake Ass'n,* 141 A.2d 583, 587 (Pa. 1958).  There are genuine issues of material fact as to whether Mr. Swingle was entitled to a prescriptive easement of the Disputed Water Area and what the acquired uses might be.  Defendants' motion for summary judgment on this issue will be denied.

### ii.   Defendants' Predecessors' Conveyance Of A Prescriptive Easement

Even assuming that Mr. Swingle has acquired use by prescriptive easement, the question remains as to what has been conveyed to the Defendants.  Defendants claim that they have the right to full use and enjoyment of the Disputed Water Area but "[a]n easement by prescription is created through adverse use [and] it is limited to the use made during the prescriptive period."  *POA Co. v. Findlay Township Zoning Hearing Bd.,* 713 A.2d 70, 76 (Pa. 1998) (citations omitted).  The extent of Mr. Swingle's previous use is genuinely disputed, and therefore the issue must be tried.

Once it is determined whether Mr. Swingle had an easement to convey and what uses are encompassed in that easement, Plaintiffs contend that the next question is what type of easement is it.  There are generally two distinct classes of easements: easements in gross and easements appurtenant.  An easement in gross is a benefit that is "held by a particular individual" and "is not tied to ownership or occupancy of a particular unit or

parcel of land." *Kapp v. Norfolk & Southern Ry. Co.,* 350 F. Supp. 2d 597, 606 n.7 (M. D. Pa. 2004).  It is a "mere personal interest in, or right to use, the *land of another." Loughran v. Matylewicz,* 367 Pa. 593, 597 (Pa. 1951).  An easement appurtenant, on the other hand, "is an easement that runs with the land." *Kents Run P'ship, Ltd v. Glosser,* 323 B.R. 408, 422 (W. D. Pa. 2005).  "Such an easement arises when the grantee holds, at the time of the easement's conveyance, an estate in land that is benefitted by the easement obtained." *Id.*   "The construction of an easement as appurtenant is favored whenever possible" as an easement "is never presumed to attach to the person of the grantee when it can fairly be construed as appurtenant to some other estate." *Id.*

Plaintiffs urge the Court to make this distinction for the purposes of determining whether the easement held by Mr. Swingle can even be conveyed.  Plaintiffs argue that if Defendants' easement rights are in gross rather than appurtenant, not all of it can be assigned.  Without making a determination as to whether Mr. Swingle's easement is in gross or appurtenant, the Court will address Plaintiffs' claim that only commercial rather than personal easements in gross are assignable.

The Court does not agree that personal easements in gross are not assignable. Plaintiffs cite *Miller v. Lutheran Conference & Camp Ass'n,* 200 A. 646 (Pa. 1938) as the sole authority in support of  their position that at best, Mr. Swingle had a non-commercial easement in gross, which is non-assignable.  This case, however, does not determine whether an easement for personal enjoyment is barred from being assigned. The Supreme Court of Pennsylvania only says that since there is a dispute on whether an

11

easement in gross could be assigned, there is more justification for upholding

assignments of commercial easements. *Id.* at 651 ("There are dicta in Pennsylvania that

they are non-assignable . . . .   But there is forcible expression and even definite authority

to the contrary. . . .").  In fact, in the same opinion, the court stated that "[t]here does not

seem to be any reason why the law should prohibit the assignment of easement in gross

if the parties to its creation evidence their intention to make it assignable." *Id.*

     In determining what has been conveyed, it is customary for the court to "ascertain

and effectuate the intention of the parties" as "[a] deed is to be interpreted in light of the

conditions existing when it was executed."  *In re Conveyance of Land Belonging to City of

DuBois,* 335 A. 2d 352, 357 (Pa. 1975).  As evidence of conveyance, Defendants offer

three (3) deeds: (1) <u>September 1, 1996 deed</u>: This deed was for the conveyance of in

excess of 52 acres of land contiguous to and partially covered by the waters of Lake Ariel

("Parcel 1") and states, ". . . with the right in the Grantors . . . to go across at all

reasonable times and places from their remaining lands so much of the land hereby

conveyed as the Grantors have historically used to access the waters of Lake Ariel  for

fishing and boating, including the right to transport a boat to Lake Ariel." (Doc. 126 at

12.); (2) <u>August 25, 1998 corrective deed</u>: This deed states, "No language contained

herein shall be interpreted to diminish the reservation of rights by the Grantors in the prior

deed to access the waters of Lake Ariel for fishing and boating, including the right to

transport a boat to Lake Ariel."; and (3) <u>July 12, 2001 deed</u>: This deed was for the

conveyance of in excess of 34 acres of land ("Parcel 2") and states, ". . . waters, water

courses . . . and appurtenances whatsoever unto the hereby granted premises . . . ."

     The language contained in both the deed and corrective deed for Parcel 1,

reserving Grantors' right to use the Disputed Water Area, appears to be an acknowledgment on the part of the Grantors as to their rights to the Disputed Water Area. Without any language of conveyance, it is ambiguous as to whether the Grantors intended to only reserve these rights or convey these rights to the Defendants. The language in the deed conveying Parcel 2, however, grants all of the Grantors' appurtenances to the Defendants. Hence, if the Grantors had any easements to convey to the Defendants, they did so in the July 12, 2001 deed. Defendants' motion for summary judgment on this issue will therefore be granted.

   **b.   Res Judicata/ Claim Preclusion**

   As their Fifth Separate Defense, Plaintiffs asserted that Defendants are precluded from counterclaiming because they are barred by claim preclusion. Plaintiffs contend that the prior litigation and settlement agreement between ALO and Mr. Joseph Asaro (father to Defendants Lori Dring and Nancy Asaro) ("Settlement Agreement") is considered a final judgment on the merits and serves to preclude Defendants' present counterclaims. Plaintiffs further argue that the Defendants are bound by the Settlement Agreement because they are in privity with Mr. Asaro. Defendants ask for summary judgment in their favor with respect to this issue because they claim that there is no privity and hence, claim preclusion should not apply.

   The doctrine of res judicata encompasses two preclusion concepts:

> Under collateral estoppel or issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior cause of action . . . .  Claim preclusion or *res judicata* provides that when a court has entered a final judgment on the

13

> merits of a cause of action, the parties to the suit and
> their privies are thereafter bound 'not only as to every
> matter which was offered and received to sustain or
> defeat the claim or demand, but as to any other
> admissible matter which might have been offered for
> that purpose.'"

*Brody v. Hankin,* 299 F. Supp. 2d 454, 258 (E. D. Pa 2004) (citations omitted).

Other authorities require that the claims be the same as those asserted in the previous

action. *Huck v. Dawson,* 106 F.3d 45, 48 (3d Cir. 1997).  Plaintiffs seem to confuse issue

and claim preclusion.  The Court will assume that Plaintiffs meant to raise the defense of

claim preclusion and examine whether the three prongs of claim preclusion are present n

this case.  As both cases dealt with use of the Disputed Water Area, the claim is the

same.  The remaining two issues will be whether the previous settlement agreement is

considered a final judgment on the merits and whether there is privity between Mr. Asaro

and Defendants.

### i.      Settlement Agreement As Final Judgment On The Merits

The Settlement Agreement states that "1. The Asaros [i.e., Joseph and Elaine]

agree that Ariel Land Owners, Inc. is the owner of the fee of Lake Ariel , which includes

the area known as Mud Pond. . . .  The Asaros further agree that Ariel Land Owners, Inc.

is the only party from whom rights to Lake Ariel and/or Mud Pond may be obtained."

(Doc. 125-3 at 12.)  In order for claim preclusion to apply, a final judgment has to have

been rendered in the settlement agreement.  *One Virginia Ave. Condo. Assoc. of Owners

v. Reed,* No. 18726-NC, 2005 Del. Ch. LEXIS 115, *25 (Del. Ch. 2005).

There is a dispute between Plaintiffs and Defendants as to whether the terms of

this Settlement Agreement apply to the Asaros' daughters' subsequent purchase of a

14

different plot of land near the Disputed Water Area.  While that question remains to be tried, final judgment on the merits of the case between the Asaros and ALO has been reached in the Settlement Agreement.  There is no ambiguity that the Asaros have agreed that ALO "is the only party from whom rights to Lake Ariel and/or Mud Pond may be obtained." (Doc. 125-3 at 12.)   "The question of whether contract terms are clear or ambiguous is a legal one . . ." and it is deemed clear when "the contractual language is subject to only one reasonable interpretation." *Ramada Franchise Sys., Inc. v. Jai Shyam, Inc.,* No. 03-4303, 2004 U.S. App. LEXIS 20563, *4 (3d Cir. 2004) (citations omitted).  In this case, it is clear that the overall purpose of the Settlement Agreement was to clarify the fact that for all uses of the Disputed Area as between the Asaros and ALO, permission must be sought solely from ALO.

### ii.    Privity Between Joseph Asaro And Defendants

There is a dispute between the parties on the interpretation of paragraph 1 of the Settlement Agreement.  The terms of paragraph 1 is not in dispute, rather, the crux of the dispute is in the reach and application of this paragraph.  Plaintiffs argue that the terms in paragraph 1 apply to all those privy to Mr. Asaro (Doc. 150 at 37) while Defendants argue that it is limited just to Mr. Asaro and his wife (Doc. 126 at 25).

Under Pennsylvania law, the basic elements of agency are considered to be "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Wilcox v. Pepsico, Inc.,* 174 F. Supp. 2d 265, 267 (E.D. Pa 2001) (citations omitted).  There is genuine issue of material fact as to whether Mr. Asaro and

15

the Defendants have an agency relationship.

Plaintiffs point out that Mr. Asaro admitted in his deposition that he was the one that chose the property, negotiated the price, paid for and closed on the property. (Doc. 150 at 43.)  Mr. Asaro was also in control of the bills and litigation related to this property. (*Id.*) Defendants argue, however, that despite the lack of documentation, the purchase money was a loan from their father and that Mr. Asaro did not benefit from this transaction. (Doc. 126 at 19.)  Defendants also argue that there was no implied or expressed authority given by them to Mr. Asaro (Doc.126 at 20), but there is evidence that some consent and authority was given to conduct the purchase.  Defendants further contend that Mr. Asaro did not exercise continuous control over the Defendants as is required to find an agency relationship. *See Myszkowski v. Penn Stroud Hotel, Inc.,* 634 A.2d 622, 626 (Pa. Super. Ct. 1992) (citations omitted) ("It is the element of continuous subjection to the will of the principle that distinguishes the ... agency agreement from other agreements.").

Whether Mr. Asaro had continuous control over the activities of the Defendants or that Defendants were acting on behalf of Mr. Asaro present genuine issues of material fact and hence, Defendants' motion for summary judgment on the issue of claim preclusion will be denied.

### c.    Equitable Estoppel

Plaintiffs raised an affirmative defense of equitable estoppel but decided to withdraw this defense as duplicative.  Therefore, the Court will not address this issue as it has been withdrawn.

**CONCLUSION**

Plaintiffs' motion for summary judgment will be granted in part and denied in part. Plaintiffs are entitled to summary judgment on Count II.  Plaintiffs are also entitled to summary judgment on Count V with respect to Defendants' claim that ownership of a portion of the waterbed in the Disputed Water Area gives them an appurtenant right to full use and enjoyment of the Disputed Water Area. The Court, however, will deny Plaintiff's motion for summary judgment on Count IV and the remainder of the issues raised in Count V.

Defendants' motion for summary judgment will be granted in part and denied in part.  Defendants are entitled to summary judgment as to the issue of whether the Grantor's have conveyed their easement rights to the Defendants in their deeds.  The Court will deny Defendants' motion for summary judgment on whether Grantors had prescriptive easement rights to convey and whether claim preclusion applies to this case.

An appropriate Order follows.


 September 30, 2005                                    /s/ A. Richard Caputo
Date                                                   A. Richard Caputo
                                                       United States District Judge

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ARIEL LAND OWNERS, INC.,

      Plaintiff,

         v.

LORI DRING and NANCY ASARO,

      Defendants/Counterclaim Plaintiffs,

         v.

ARIEL LAND OWNERS, INC.,
KARL R. IFFLAND and
ALICE L. IFFLAND, et al.,

      Counterclaim Defendants.

CIVIL ACTION NO. 3:01-CV-0294

(JUDGE CAPUTO)

**ORDER**

    **NOW**, this ___30th___ day of September, 2005, **IT IS HEREBY ORDERED** that:

(1)    Motion for Partial Summary Judgment of Plaintiff/Counterclaim Defendant Ariel Land Owner, Inc. and Counterclaim Defendants Karl R. and Alice L. Iffland, et. al.  (Doc. 120) is **GRANTED in part** and **DENIED in part**.

    (a)    The motion is **GRANTED** insofar as it seeks summary judgment with respect to:

        (i)  Count II; and

        (ii) Count V, only with respect to Defendant's claim that ownership of a portion of the waterbed in the Disputed Water Area gives them appurtenant right to full use and enjoyment.

    (b)    The motion is **DENIED** insofar as it seeks summary judgment with respect to Count IV and rest of Count V.

(2)     Motion for Partial Summary Judgment of Defendants/Counterclaim
        Plaintiffs, Lori Dring and Nancy Asaro (Doc. 124) is **GRANTED in part and
        DENIED in part**.

   (a)     The motion is **GRANTED** insofar as it seeks summary judgment on
           whether any easements that the Grantors have, if any, has been
           conveyed to the Defendants in their deeds.

   (b)     The motion is **DENIED** insofar as it seeks summary judgment on
           whether Grantors had any prescriptive easement rights  and whether
           claim preclusion applies to this case.

                                               /s/ A. Richard Caputo
                                               A. Richard Caputo
                                               United States District Judge