ROSENN, JENKINS & GREENWALD, L.L.P.
Garry S. Taroli, Esquire
Atty. I.D. No. 30159
Donald H. Brobst, Esquire
Atty. I.D. No. 17833
15 South Franklin Street
Wilkes-Barre, PA 18711
(570) 826-5600
      -AND-
PROFITA & ASSOCIATES, L.L.C.
Michael Profita, Esquire
Pro Hac Vice
      Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARIEL LAND OWNERS, Inc., | CIVIL ACTION |
| Plaintiff | ACTION TO QUIET TITLE |
| vs. | No. 3:01-CV-0294 |
| LORI DRING and NANCY ASARO, | |
| Defendants/Counterclaim Plaintiffs | Judge A. Richard Caputo |
| vs. | (Electronically Filed) |
| ARIEL LAND OWNERS, INC., KARL R. IFFLAND and ALICE L. IFFLAND, et al., | |
| Counterclaim Defendants | |

## DEFENDANTS' PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

1.     LORI DRING, is an adult individual residing at 29 Sleepy Hollow Drive, Oak Ridge, New Jersey 07438, and is a resident and citizen of the State of New Jersey.

524337.1

2.     NANCY ASARO, is an individual residing at 28 Trenton Terrace, Wayne, New Jersey, and is a resident and citizen of the State of New Jersey.

3.     ARIEL LAND OWNERS, INC., is a Pennsylvania for profit corporation maintaining an address within the Commonwealth of Pennsylvania at P.O. Box 503, Lake Ariel, Pennsylvania 18436, and its principal office and place of business is within the Commonwealth of Pennsylvania.

4.     The additional defendants herein described are owners of certain real property lying near the western shore of Lake Ariel and the interconnecting stream between Lake Ariel and Mud Pond (collectively "Property Owners").

5.     Those Property Owners are identified by name, address and location of their property at Lake Ariel as follows:

(a)  Karl R. and Alice L. Iffland are competent adult individuals with an address at 401 Clover Street, Clarks Summit, Pennsylvania, and own the property known as Lot 1, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(b) Paul and Elizabeth O'Hara Kelly are competent adult individuals with an address at 1659 North Washington Avenue, Scranton, Pennsylvania, and own the property known as Lot 33, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(c) Robert M. and Jean Ann Gilroy are competent adult individuals with an address at 515 Jadwin Street, Scranton, Pennsylvania, and own the property

524337.1

known as Lot 5, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(d) Salvatore and Mona H. Barba are competent adult individuals with an address at P.O. Box 266, Lake Ariel, Pennsylvania, and own the property known as Lots 6.1 and 6.2, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(e) Richard J. and Joan C. Redling are competent adult individuals with an address at 15191 Intracoastal Court, Fort Meyers, Florida, and own the property known as Lot 7, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(f) Michael S. and Susan H. Kwiatek are competent adult individuals with an address at 105 Maple Avenue, Lake Ariel, Pennsylvania, and own the property known as Lot 9, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(g) Cecilia Altier is a competent adult individual with an address at 231 Saddle Lake Road, Tunkhannock, Pennsylvania, and owns property as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(h) George W. and Doris Whitehouse are competent adult individuals with an address at 2872 Sheffield Drive, Emmaus, Pennsylvania, and own the property known as Lot 14, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

524337.1

(i) Michael J. Bain and Nikki T. Rooker are competent adult individuals with an address at 456 West 23rd Street, Apartment 2F, New York, New York, and own the property as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(j) John J. and Sandra L. Eltrimgham are competent adult individuals with an address at 391 Burgoyne Drive, New Cumberland, Pennsylvania, and own the property known as Lot 6, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(k) Henry R. and Cynthia Lempicky are competent adult individuals with an address at RR 1 Box 125, Dalton, Pennsylvania, and own the property known as Lot 8, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(l) William W. and Gail Albright are competent adult individuals with an address at 1305 Schlager Street, Scranton, Pennsylvania, and own the property known as Lot 13, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(m)    J. Conrad Bosley and Helen Dewey and Richard R. and George F. Eynon are competent adult individuals with an address at 13 Leslie Drive, Scranton, Pennsylvania, and own the property known as Lot 15, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(n) Thomas J. and M. Sarah Mastri are competent adult individuals with an address at P.O. Box 80, Elmhurst, Pennsylvania, and own the property known as Lot 16, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(o) Allan D. and Lynn W. Birney are competent adult individuals with an address at 4625 Mill Road, Coopersburg, Pennsylvania, and own the property known as Lots 17, 18, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(p) Florence M. Olmstead and Ronald B. Smith are competent adult individuals with an address at RR 6 Box 6549, Moscow, Pennsylvania, and own the property known as Lot 19, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(q) Stephen Cresswell McIlnay and David Nathan McIlnay are competent adult individuals with an address at 49 Willow Creek Road, Wrightsville, Pennsylvania, and own the property known as Lots 21, 21.1, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(r) Walter and Diane Woehrle are competent adult individuals with an address at RR 5 Box 5021, Moscow, Pennsylvania, and own the property known as Lot 22, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

524337.1

(s) John Philip and Heidi Diefenderfer are competent adult individuals with an address at PO Box 43, lake Ariel, Pennsylvania, and own the property known as Lots 23, 23.1, 23.2, 23.3 and 24, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(t) Robert T. and Marjorie Taylor are competent adult individuals with an address at 1627 N. Webster Avenue, Dunmore, Pennsylvania, and own the property known as Lot 25, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(u) Audrey Rusignuolo and Donna Impaglia are competent adult individuals with an address at 8 Campbell Road, Fairfield, New Jersey, and own the property known as Lot 26, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(v) Richard H. and Daniel O. Capozzi are competent adult individuals with an address at 104 Park Drive, Clarks Summit, Pennsylvania;

(w)   Marilyn C. Manger is a competent adult individual with an address at Box 36, Elmhurst, Pennsylvania, and owns the property known as Lot 24, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(x) Helen B. Scott is a competent adult individual with an address at 1615 North Webster Avenue, Dunmore, Pennsylvania, and owns the property known

524337.1

as Lot 26.1, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(y) Louis and Rose Ann Croce are competent adult individuals with an address at 91 Sycamore Street, West Hempstead, New York, and own the property known as Lots 28, 28.1, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(z) Lee Conaboy and A. Peter DiCenso are competent adult individuals with an address at 7786 Solitude Court, McLean, Virginia, and own the property known as Lots 29, 29.1 and 29.2, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(aa)   Judith Tadder, Executrix of the Estates of Fred and Ethel Ross, is an adult competent individual with an address at 222 Laurel Hollow Drive, Nokomis, Florida, and owns the property known as Lots 30, 30.1 and 31, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(bb)   John N. Potochnik is a competent adult individual with an address at 1602 Price Street, Scranton, Pennsylvania, and owns the property known as Lots 32, 33, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(cc)   Frederick Mitchell is a competent adult individual with an address at PO Box 371, Lake Ariel, Pennsylvania, and owns the property known as Lot

524337.1

34, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(dd)   Frank R. and Sharon P. Penater are competent adult individuals with an address at 824 North 24th Street, Allentown, Pennsylvania, and own the property known as Lots 35, 35.1, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ee)   Brian P. Dempsey is a competent adult individual with an address at PO Box 127, Castleton, Vermont, and owns the property known as Lot 37, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ff)   Mary Jo Cannon and Marita Lowman are competent adult individuals with an address at 1005 Ridge Avenue, Scranton, Pennsylvania, and own the property known as Lot 38, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(gg)   Russell L. and Dolores E. Miller are competent adult individuals with an address at 5605 SW 12th Avenue, Unit 110, Cape Coral, Florida, and own the property known as Lots 40, 40.1, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(hh)   The Ariel Land Owners, Inc. is a Pennsylvania corporation with a registered address at PO Box 503, Lake Ariel, Pennsylvania, and own the

524337.1

property known as Lots 5.1, 16.1, 33.1, 37.1, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ii) Robert M. Karuzie, Sr. is a competent adult individual with an address at 1513 Dawson Street, Lake Ariel, Pennsylvania, and owns the property known as Lot 36, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(jj) David A. Sohns is a competent adult individual with an address at 3101 Twig Lane, Bowie, Maryland, and owns the property known as Lot 39, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(kk)   Terrence J. and Joan M. Dempsey are competent adult individuals with an address at 1795 Garret House Lane, Fairfield, Ohio, and own the property known as Lot 41, 41.1, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ll) William J. and Barbara Hinz are competent adult individuals with an address at 334 Kattelville Road, Binghamton, New York, and own the property known as Lot 42, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(mm) James Keegan is a competent adult individual with an address at 1032 Dogwood Road, Warminster, Pennsylvania, and owns the property known

524337.1

as Lot 44, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(nn)   Edmund and Marie Burge are competent adult individuals with an address at 1616 Farr Street, Scranton, Pennsylvania, and owns the property known as Lot 46, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(oo)   Mary R. Matthews is a competent adult individual with an address at 312 S. Hyde Park Avenue, Scranton, Pennsylvania, and owns the property known as Lots 25, 26, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(pp)   Theodore E. and Linda Malakin are competent adult individuals with an address at 513 W. 15th Street, Honesdale, Pennsylvania, and own the property known as Lots 6, 7 and 8, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(qq)   Mary Moesel is a competent adult individual with an address at 191 E. 76th Street, Apartment 2C, New York, New York, and owns the property known as Lots 9, 10, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(rr)   Anthony and Carol Laboranti are competent adult individuals with an address at RR 8 Box 8346, Moscow, Pennsylvania, and owns the property

524337.1

known as Lot 43, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ss)    John and Kathryn Nalevanko are competent adult individuals with an address at RR 2 Box 2296, Moscow, Pennsylvania, and own the property known as Lot 45, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(tt) Marnel Matthews Winn and Marjorie Matthews Gillespie are competent adult individuals with an address at 267 Summit Avenue, Island Heights, New Jersey, and own the property known as Lots 48, 48, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(uu)    Louis Allen Wolfensen and Conn Quinn are competent adult individuals with an address at PO Box 99, Lake Ariel, Pennsylvania, and own the property known as Lot 5, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(vv)    Robert J. and Linda B. Clauss are competent adult individuals with an address at 235 Edgewood Avenue, Westfield, New Jersey, and own the property known as Lots 13, 14, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ww) Peter Lombardi is a competent adult individual with an address at 406 Monocacy Trail, Spring Grove, Pennsylvania, and owns the property

524337.1

known as Lot 12, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(xx)   Michael Malakin is a competent adult individual with an address at PO Box 84, Lake Ariel, Pennsylvania, and owns the property known as Lot 6, 7 and 8, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(yy)   David D. and Regina M. Clauss are competent adult individuals with an address at 1304 Lake Ariel Hwy, Lake Ariel, Pennsylvania, and own the property known as Lot 23, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(zz)   Inez M. Matthews and Karen L. Havenstrite are competent adult individuals with an address at PO Box 2, Lake Ariel, Pennsylvania, and own the property known as Lots 25, 26, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(aaa)  Kathleen R. Cita is a competent adult individual with an address at PO Box 8, Lake Ariel, Pennsylvania, and owns the property known as Lot 28, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(bbb) Alvin J. and Louisa A. Gutt are competent adult individuals with an address at 1067 Sumneytown Pike, Harleysville, Pennsylvania, and own the

524337.1

property known as Lot 11, 16, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ccc) Steven Kowalczyk and Karen Barillo are competent adult individuals with an address at RR 2 Box 3030, Honesdale, Pennsylvania, and own the property known as Lot 20, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ddd) Paul R. and Sharon F. Savitsky are competent adult individuals with an address at RR 1 Box 362, Olyphant, Pennsylvania, and own the property known as Lot 22, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(eee)  Richard A. Gaylord is a competent adult individual with an address at PO Box 13, Lake Ariel, Pennsylvania, and owns the property known as Lot 29, 29.1, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(fff)   Travis R. Merritt is a competent adult individual with an address at RR 1 Box 1230, Moscow, Pennsylvania, and owns the property known as Lot 30, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ggg) Matthew Drace is a competent adult individual with an address at 320 E. 30th Street, New York, New York, and owns the property known as Lot

524337.1

31, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(hhh) Margaret Kelly, Trustee of the Family Trust, is a competent adult individual with an address at 212 Fairview Road, Clarks Summit, Pennsylvania, and owns the property known as Lot 33, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(iii)   May L. Jackovics is a competent adult individual with an address at 2871 N. Ocean Blvd., Boca Raton, Florida, and owns the property known as Lot 35, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(jjj)   John S. and Barbara A. Terhune are competent adult individuals with an address at 105 Petticoat Lane, Annandale, Virginia, and own the property known as Lot 37, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(kkk) Marion P. Schautz is a competent adult individual with an address at PO Box 404, Lake Ariel, Pennsylvania, and owns the property known as Lot 32, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(lll)   William J. Egan is a competent adult individual with an address at 806 River Street, Scranton, Pennsylvania, and owns the property known as Lots

524337.1

1, 1.1, Block 12-3 and Lot 38, Block 12-4, as shown on the Tax Maps of the Township of Lake, Wayne County, Pennsylvania;

(mmm)  Steven Kowalczk   and Karen Barillo are competent adult individuals with an address at 2976 Lake Ariel Highway, Honesdale, Pennsylvania, and own the property known as Lot 20, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(nnn) Norann Neals Kiernan is a competent adult individual with an address at Post Office Box 94, Lake Ariel, Pennsylvania, and owns the property known as Lot 4, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ooo) Karen Maxey Palmer is a competent adult individual with an address at P.O. Box 353, Lake Ariel, Pennsylvania, and owns the property known as Lot 2, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ppp) Peter and Jane M. Clauss are competent adult individuals with an address in care of Steve and Tammy Vitelli, 347 Tisdel Road, Lake Ariel, Pennsylvania, and own the property known as Lot 1.1, Block 12-04, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(qqq) Daniel Riedel is a competent adult individual with an address at 1301 Lake Ariel Highway, Lake Ariel, Pennsylvania, and owns the property

524337.1

known as Lot 1, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(rrr)   Mary E. Emmel and William J. Egan, Jr., Trustees are competent individuals owing a property with an address at 223 Grayson Drive, Clarks Green, Pennsylvania, and own the property known as Lots 2, 2.1 and 3, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(sss)   Michael Merrick is a competent adult individual with an address at 305 Crown Avenue, Scranton, Pennsylvania, and owns the property known as Lot 4, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(ttt)   Jessica Faux is a competent adult individual with an address at 231 Saddle Lake Road, Tunkhannock, Pennsylvania, and owns the property known as Lot 12, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

(uuu) Marilyn C. and James P. Gregorowicz are competent adult individuals with an address in care of John P. and Heide B. Diefenderfer, P.O. Box 43, Lake Ariel, Pennsylvania, and own the property known as Lot 24, Block 12-3, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania;

524337.1

(vvv) Thomas P. and Judith M. Jackovics are competent adult individuals with an address at 6854 Estates Drive Oakland, CA 94611, and own the property known as Lot 35, Block 12-4, as shown on the Tax Map of the Township of Lake, Wayne County, Pennsylvania,

6.      Defendants are the owners in fee of in excess of 89 acres of land in the Township of Lake, County of Wayne, and Commonwealth of Pennsylvania by virtue of two conveyances recorded in the Office of the Recorder of Deeds of Wayne County from Robert M. Swingle and Irene D. Swingle, his wife, and Glenna J. Curtis and Marion J. Swingle, Grantors to Nancy Asaro and Lori Dring, Grantees.   The first conveyance of in excess of 52 acres of land (hereinafter referred to as the "First Swingle Parcel") took place on or about September 13, 1996, by deed recorded in Wayne County Deed Book 1176 at page 0197, et seq. The Deed for the First Swingle Parcel was admitted into evidence as Exhibit DT _____.   The second conveyance of in excess of 34 acres of land (hereinafter referred to as the "Second Swingle Parcel") took place on or about July 12, 2001, by deed recorded in Wayne County Deed Book 1815, at Page 0149, et seq., which was admitted into evidence as Exhibit DT _____.

7.      Defendants are the owners in fee of additional lands lying between the First Swingle Parcel and the margin of the bodies of water known as Marsh Pond [now Mud Pond] and Jones Pond [now Lake Ariel] and the channel or stream connecting them by virtue of the Corrective Deed dated April 25, 1998 from

17

Robert M. Swingle and Irene D. Swingle, his wife, and Glenna J. Curtis and Marion J. Swingle, Grantors to Defendants as Grantees and recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 1418 at page 139, et seq., which was admitted into evidence as Exhibit DT _____.

8.    Prior to obtaining property along the margin of the western shore of Lake Ariel, Mud Pond, and the stream between those two bodies of water from Wells College and Rensselaer Polytechnic Institute, the Defendants obtained prescriptive rights appurtenant from Robert M. Swingle, et al, to use the area along the margin of the western shore of Lake Ariel, Mud Pond, and the stream between those two bodies of water down to an elevation of 1423.5 feet above sea level, together with prescriptive rights appurtenant to use the waters of Lake Ariel, Mud Pond, and the stream between those two bodies of water.

9.    As a result of having obtained fee simple title to the First Swingle Parcel and the Second Swingle Parcel, and as a result of having obtained prescriptive rights, Defendants own down to an elevation of 1423.5 feet above sea level as to the property obtained from the Swingle family.

10.    Plaintiff obtained title to certain real property by virtue of that certain deed from A.J. Schrader, et al., to Plaintiff dated April 20, 1964 and recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 221 at Page 292, et seq., which was admitted into evidence as Exhibit DT _____. This is a remnant deed and does not specifically describe the metes and bounds of

524337.1

the lands conveyed to the Plaintiff beneath the waters of Lake Ariel and Mud Pond, the extent of which can only be determined by examining and plotting out all conveyances out of the chain of title of the Plaintiff's predecessors in title.

11.     Plaintiff and Defendants share a common grantor/prior owner in the chain of title of the lands herein above described by the name of "George Cadwalader, Executor of the Last Will and Testament of Mary Cadwalader", who, prior to December 13, 1859, was the owner of a tract of land which included the lands owned by the Plaintiff and the Defendants.

12.     By deed dated December 13, 1859, and recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 28 at page 36 et seq., the First Swingle Parcel and the Second Swingle Parcel which are now owned by the Defendants, was conveyed separately from the bed of Lake Ariel and Mud Pond lying below the water elevation of 1423.5 feet above sea level.  This conveyance constituted the first division of ownership of land separate from the ownership of the waters of Lake Ariel and Mud Pond.

13.     On December 13, 1859, George Cadwalader, Esquire, Executor of the Last Will and Testament of Mary Cadwalader, Deceased, conveyed property owned by him along the West Shore of Lake Ariel to Edward W. Weston by deed recorded in Wayne County Deed Book 28 at Page 36, which was admitted in evidence as DT-_____.

524337.1

14.     The aforementioned deed included 464 acres of land bordering Jones Pond (now Lake Ariel) along its natural western margin.

15.     Edward W. Weston deeded part of his 464 acres to William Jones by deed dated October 3, 1860 and recorded in Wayne County Deed Book 28 at Page 92, which was admitted in evidence as DT-_____.

16.     Edward W. Weston deeded part of the aforementioned 464 acres to Joel Jones by deed dated January 21, 1862 and recorded in Wayne County Deed Book 30 at Page 39, which was admitted in evidence as DT-_____.

17.     Edward W. Weston deeded part of the 464 acres received above to Jeremiah T. Barnes by deed dated January 21, 1862 and recorded in Wayne County Deed Book 30 at Page 40, which was admitted in evidence as DT-_____.

18.     The deed from Edward W. Weston to William Jones recorded in Wayne County Deed Book 28 at Page 92 does not convey the land lying between the natural western margin of Jones Pond and the "high water mark along the water of said pond".

19.     The deed from Edward W. Weston to Joel Jones recorded in Wayne County Deed Book 30 at Page 39 contains the following language: "Thence along the margin of the highest flow of water in Jones Pond . . . leaving the land between said highest flow of water and its natural margin of said pond still belonging to Edward W. Weston," and therefore created a specific exception from the

conveyance to Joel Jones, and reservation to Edward W. Weston of the land lying between the natural margin and the margin of the highest flow.

20.     The deed from Edward W. Weston to Jeremiah T. Barnes recorded at Wayne County Deed Book 30 at Page 40 described the course along Lake Ariel as: "Thence along the margin of the highest flow of water in Jones Pond and Marsh Pond southwestward . . .", and therefore did not include the area between the natural margin of Jones Pond and Marsh Pond and the margin of the highest flow of water in Jones Pond and Marsh Pond.

21.     The deeds to Joel Jones and Jeremiah T. Barnes from Edward W. Weston recorded in Wayne County Deed Book 30 at Page 39 and Wayne County Deed Book 30 at Page 40, respectively, were executed on the same day, i.e. January 21, 1860.

22.     As a result of the aforementioned three (3) deeds of conveyance by Edward W. Weston to William Jones, Joel Jones and Jeremiah T. Barnes, a strip between the natural margin of Lake Ariel and the high water mark and/or margin of the highest flow of the water (hereinafter referred to as the "Western Shore Strip") was reserved unto Edward W. Weston.

23.     Joel Jones conveyed the property he received from Edward W. Weston by deed recorded in Wayne County Deed Book 30 at Page 39 to Byron E. Jones on January 18, 1864 by deed recorded in Wayne County Deed Book 31 at Page 76 which was admitted into evidence as DT_____.   That deed included a

524337.1

specific reservation, "leaving the land lying between the highest flow of water and the natural margin of said pond (i.e., Lake Ariel) belonging to Edward Weston".

24.     A later deed in the same Joel Jones chain of title from Ruben P. Jones, et ux to Byron E. Jones, which deed is recorded in Wayne County Deed Book 53 at Page 134 which was admitted into evidence as DT-_____ contained the same reservation, "leaving the land lying between the said highest flow of water and the natural margin of said pond still belonging to Edward Weston". Edward W. Weston never conveyed the Western Shore Strip prior to his death.

25.     Edward W. Weston died October 28, 1891 and his estate was raised in the Lackawanna County Register of Wills Office to Number 2277 of 1891.

26.     The probated Will of Edward W. Weston indexed to the aforementioned Estate makes no specific devise of the Western Shore Strip, which therefore devolved under Edward W. Weston's residuary estate to his wife Susan S. Weston.

27.     Susan Weston died March 25, 1916 and her Will was admitted to probate in Lackawanna County in the Register of Wills office and indexed to Number 242 of 1916. She did not convey the Western Shore Strip prior to her death.

28.     The Last Will and Testament of Susan S. Weston made no specific devise of the Western Shore Strip and therefore the Western Shore Strip devolved

under her residuary estate to her son Charles S. Weston and her daughter, Caroline Weston Bird.

29.     Caroline Weston Bird died October 7, 1931 and her Last Will was admitted for probate in Suffolk County, Massachusetts to Number 251513 of 1931, recorded in Volume 1527 at Page 42.  She did not convey the Western Shore Strip prior to her death.

30.     The Last Will and Testament of Caroline W. Bird made no specific devise of the Western Shore Strip and therefore the Western Shore Strip devolved under her residuary estate to her brother Charles S. Weston.

31.     Charles S. Weston died October 14, 1947 and his Will was admitted to probate in Lackawanna County Register of Wills Office to Number 939 of 1947. He did not convey to the Western Shore Strip prior to his death.

32.     The Last Will and Testament of Charles S. Weston made no specific devise of the Western Shore Strip and therefore the Western Shore Strip devolved under Sections 29 and 30 of his probated Will which provided that the residuary of his estate be divided one third (1/3) to Wells College of Aurora, New York and two thirds (2/3) to Rensselaer Polytechnic Institute of Troy, New York.

33.     Wells College conveyed its one third (1/3) interest in the Western Shore Strip to Lori Dring and Nancy Asaro by quit claim deed dated December 6, 2001, recorded in Wayne County Deed Book 1931 at Page 204 – 208.

524337.1

34.     Rensselaer Polytechnic Institute conveyed its two thirds (2/3) interest in the Western Shore Strip to Lori Dring and Nancy Asaro by quit claim deed dated November 2, 2001, recorded in Wayne County Deed Book 1931 at Page 209.

35.     Neither Wells College nor Rensselaer Polytechnic Institute conveyed any interest in the Western Shore Strip prior to the conveyances to Lori Dring and Nancy Asaro.

36.     As a result of the aforementioned estates and conveyances, Lori Dring and Nancy Asaro are the owners in fee of the Western Shore Strip which consists of a parcel of land along the West Shore of Lake Ariel lying between the margin of the highest flow of the water on the one hand, and the natural western margin of the Marsh Pond (now Mud Pond) and the natural western margin of Jones Pond (now Lake Ariel) and the stream between them on the other hand.

37.     The Plaintiff is the owner of a strip of land (the ALO Strip) approximately fifty feet in width near the western shore of Lake Ariel which extends from Lot 42  of Block 12-03 on the south end to Route 191 on the north end, which is partially occupied by West Shore Drive.

38.     The easterly boundary line of the ALO Strip adjoins the westerly boundary line of the Western Shore Strip owned by Defendants.

39.     The natural elevation of the waters of Lake Ariel and Mud Pond is approximately 1,423.5 feet above sea level, and the shoreline when the water level

524337.1

is at such elevation defines the natural margin of the waters of Lake Ariel and Mud Pond in the absence of a dam.

40.     Plaintiff and its predecessors in title engaged in the construction and/or maintenance of artificial dams which raised the elevation of the waters of Lake Ariel and Mud Pond.  As a direct result of Plaintiff and its predecessors in title artificially raising the elevation of the waters of Lake Ariel and Mud Pond by constructing and maintaining dams, the current high water elevation of the waters of Lake Ariel and Mud Pond is approximately 1,425.9 feet above sea level.

41.     As a direct result of Plaintiff and its predecessors in artificially raising the elevation of the waters of Lake Ariel and Mud Pond to 1,425.9 feet above sea level by the construction and maintenance of dams, the waters of Lake Ariel and Mud Pond now cover those portions of the above-described land owned in fee by Defendants which lies between a water elevation of 1,423.5 feet and 1,425.9 feet above sea level.

42.     The artificial raising of the elevation of the waters of Lake Ariel and Mud Pond was accomplished without the consent of Defendants or their predecessors in title and was unauthorized.

43.     Lake Ariel and Mud Pond are natural, and not man-made lakes.  The current and historic natural water elevation of Lake Ariel and Mud Pond is 1,423.5 feet above sea level.

524337.1

44.     The highest monumented water level of Lake Ariel and Mud Pond is 1,427.96 feet above sea level.

45.     The westerly boundary of that portion of the lands under Lake Ariel and Mud Pond which are claimed to be owned by the Plaintiff has not been defined by metes and bounds or by a survey, and in any event does not extend above 1,423.5 feet above sea level.

46.      Prior to 1989, the Plaintiff was not aware that it owned any of the land under Mud Pond.

47.     Lake Ariel and Mud Pond are non-navigable bodies of water.

48.     The stream or channel which connects Lake Ariel to Mud Pond is a non-navigable stream.

49.     The boundary of that portion of the First Swingle Parcel, the Second Swingle Parcel and the Western Shore Strip which borders the stream extends to the center line of the stream.

50.     The stream varies in width and is approximately 1,000 feet in length; and extends approximately from the line designated as Profile F to the line designated as Profile A as shown on the Map entitled "Map Showing Lands of Nancy Asaro and Lori Dring and Others dated January, 2001 prepared by William F. Schoenagel  which was admitted into evidence as part of Exhibit DT-_____.

51.     Spencer Swingle owned a large tract of land on the west shore of Mud Pond and Lake Ariel, and the stream which connects these two bodies of water

524337.1

which he acquired in 1921 and 1923.  Robert M. Swingle subsequently acquired

this property from his father, Spencer Swingle in 1942, reconveyed the property to

Spencer Swingle in 1946; Spencer Swingle died and his executor conveyed the

property to Robert M. Swingle, et al. by Deed dated February 4, 1993 and recorded

in the Office of the Recorder of Deeds in Wayne County Deed Book 776 at page

193.  Robert M. Swingle owned the property from 1942 until 1946 and owned the

property along with his two sisters, Mildred J. Swingle and Glenna J. Curtis from

1993 until 1996 when they conveyed most of this property (the First Swingle

Parcel and the Second Swingle Parcel) to Lori Dring and Nancy Asaro.   Robert M.

Swingle lived on the property for 79 years.  Spencer Swingle lived on the property

for more than 68 years.

        52.     Defendants' predecessors in title used the property conveyed to

Defendants as a working farm.  In connection with the farming activities,

Defendants' predecessors in title raised cattle on the property and watered the cattle

in Lake Ariel and Mud Pond, and the stream connecting them.  The Defendants'

predecessors in title erected a fence to prevent the cattle from roaming into

adjacent fields from the water.  The fence was constructed to span the distance

from a stone wall into the waters of Lake Ariel and Mud Pond and the stream or

channel connecting them, and extended into the waters approximately seventy-five

(75) feet to prevent the cattle from swimming around the fence and gaining access

to the adjacent cropland owned by others.

524337.1

53.     Defendants' predecessors in title knew that they did not own the waters of Lake Ariel and Mud Pond, and Defendants' predecessors in title did not request permission from the Plaintiff or Plaintiff's predecessors in title to erect or maintain the fence, or water their cattle.

54.     The construction and maintenance of the fence which extended into the waters of Lake Ariel and Mud Pond and the stream or channel connecting them, and the watering of cattle therein by Defendants' predecessors in title was open, notorious, visible, hostile and continuous for a period far in excess of twenty-one (21) years.

55.     Defendants' predecessors in title did not request permission from Plaintiff or its predecessors in title to fish, boat, swim or trap on and in the waters of Lake Ariel and Mud Pond and the stream connecting them.

56.     Robert M. Swingle, his relatives and predecessors in title used the waters of Lake Ariel, Mud Pond, and the stream between those two bodies of water for any purpose which they desired for a period in excess of 79 years and neither sought, nor received, permission from the Plaintiff or Plaintiff's predecessors in title for that use.

57.     Robert M. Swingle was born in 1919.  Ever since Robert M. Swingle was a young child his family members, relatives, guests and himself swam in Lake Ariel whenever they desired, and Robert M. Swingle used to swim in Mud Pond as well.  The swimming activities went on for a continuous period in excess of 70

524337.1

years during the summer months, and they never requested anyone to give

permission in order to swim in the waters of Lake Ariel or Mud Pond.

58.     From the time Robert M. Swingle was a child, he fished on Mud

Pond, Lake Ariel, and the stream which connects Lake Ariel to Mud Pond.  Robert

M. Swingle fished these areas for a continuous period of at least 65 years.  In

addition, his son fished on the waters of Lake Ariel and Mud Pond starting in his

early childhood, and his son's fishing activities continued for a period in excess of

thirty years.  His son also used a boat to fish on Lake Ariel and Mud Pond.   His

son lived on the Swingle farm from the time of his birth until his death in 1999.

They never sought permission from anyone in order to fish or boat on Mud Pond or

Lake Ariel.

59.     During the colder months of the year, Robert M. Swingle trapped fur

bearing animals in Mud Pond, Lake Ariel, and the stream which connected Mud

Pond to Lake Ariel.  Robert M. Swingle never sought permission from anyone to

trap these areas.  Robert M. Swingle started trapping when he was a child, and

continued trapping until he was approximately twenty-five years old.  Robert M.

Swingle also hunted in the marshy areas around Mud Pond and the stream which

connects Mud Pond to Lake Ariel over a period of 60 years and never requested

any permission to hunt these areas.

60.     When Robert M. Swingle was a child, he learned to skate on Lake

Ariel and Mud Pond and continued skating on these areas until he was married.

524337.1

His son started skating when he was a child, and continued skating on Lake Ariel and Mud Pond until he completed high school.  Between Robert M. Swingle, and his son, they skated for over 60 years on Mud Pond and Lake Ariel.  They never sought permission from anyone for skating on these areas.

61.    The swimming, fishing, boating, and skating activities conducted by Robert M. Swingle and his family were not restricted to any particular portions of Mud Pond or Lake Ariel, and they used all areas of these waters for different activities, and throughout all seasons of the year.

62.    The entire property previously owned by Robert M. Swingle and his family, a portion of which was conveyed to Defendants, has unrestricted prescriptive rights to use all of Lake Ariel, Mud Pond and the stream between those two bodies of water.

63.    Subsequent to the Defendants' acquisition of the First Swingle Parcel and the Second Swingle Parcel, the Plaintiff refused to allow the Defendants to use the waters of Lake Ariel, Mud Pond and the connecting stream, or to acknowledge the Defendants' prescriptive rights to such use.

64.    Plaintiff's Deed purports to convey to Plaintiff lands the boundary of which follows "the shore line of said lake as said shore line is defined in the several deeds conveying lands bordering on said Lake, from the common owners of said Lake and of land surrounding it."

30

65.    The deeds conveying lands from the common owners of said Lake did so based on the natural margin of the bodies of water at issue and said natural margin was below an elevation of 1425.9 feet above sea level.

66.    On December 13, 1859, the date that Plaintiff's predecessor in title purchased the land beneath a portion of Lake Ariel and Mud Pond,  the natural elevation of the waters of Lake Ariel and Mud Pond was approximately 1,423.5 feet above sea level.

67.    Because the natural level of the waters of Lake Ariel and Mud Pond was approximately 1,423.5 feet above sea level at the time Plaintiff's predecessor in title purchased the land beneath Lake Ariel and Mud Pond, such land does not consist of any portion of land extending above the margin of the natural level of the waters of Lake Ariel or Mud Pond.

68.    Plaintiff cannot prove the boundaries of its property since Plaintiff did not prove or plot the boundaries of the prior conveyances out of its chain of title, and there is no metes and bounds description of the land under Lake Ariel or Mud Pond which was conveyed to the Plaintiff's predecessor in title.

69.    In the deed in Plaintiff's title recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 51 at Page 562 from John Torrey to Simon Swingle dated December 20, 1877, the property conveyed is referred to as:

>    "All that certain lot or parcels of land situate in what was recently the Township of Salem in said County (including all or nearly all of the Ponds called "Jones Pond" and "Marsh Pond" respectively)"

524337.1

Therefore as of December 20, 1877, Plaintiff's predecessor in title had not conveyed to the Plaintiff all of the Ponds known as "Jones Pond" (now Lake Ariel) and "Marsh Pond" (now Mud Pond).

70.     The Torrey to Smith deed referred to above, furthermore contains the following instructions to anyone attempting to determine the boundaries of the property conveyed therein:

> " . . . Thence along or near the margin of said Marsh Pond and Jones Pond respectively by the lines of lots conveyed by M. Cadwalder and Tilghman  respectively to the various purchasers around said Ponds, Northerly, Easterly Southerly and Westerly, to a Northwestern corner of land . . ."

71.     The aforementioned language is repeated in deeds forming Plaintiff's chain of title up to the deed from Flora m. Schadt (widow), et al to Floyd E. Bortree, et al dated October 15, 1922 and recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 119 at Page 184, et seq.

72.     The deeds in Plaintiff's chain of title recite that the land conveyed is subject to numerous rights contained in leases and prior conveyances mentioned therein.

73.     The deed into Plaintiff from A.J. Schrader and Florence Schrader, dated April 20, 1964, recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 221 at Page 292 contains the following descriptions of the property conveyed to the Plaintiff::

524337.1

> "No. 1 All of a certain parcel of land and of land covered with water, known originally as "Jones Pond" and "Marsh Pond" and in recent years as "Lake Ariel". The boundary thereof following the shore line of said lake as said shore line is defined in the several deeds conveying lands bordering on said Lake."

74.    Plaintiff has not exercised possession of the lands below an elevation of 1425.9 feet since Plaintiff has not prevented others from using that area by any means. Plaintiff has not fenced in the area, placed "No Trespassing" signs or placed any observable improvement attached to the land below elevation 1425.9, and is therefore not in possession.

75.    The parcels of property described in the First Swingle Parcel deed and Second Swingle Parcel deed are contiguous, and were once part of a single tract of land owned by George Cadwalader, Executor of the Last Will and Testament of Mary Cadwalader.

76.    The description of the lands owned in fee by Defendants pursuant to the Deed admitted into evidence as Exhibits DT ___ (Second Swingle Parcel) is as follows:

> BEGINNING at a point in the center line of State Route 191 being the common corner of the lands of Grantors and of George Fitts (D.B. 515, p. 935), thence South69 degrees 92 minutes 20 seconds East 312.01 feet along the common line of the lands of Fitts to a point; thence South 82 degrees 29 minutes 21 seconds East 239.19 feet; thence South 63 degrees 59 minutes 55 seconds East 590.00 feet; thence South 11 degrees 0 minutes 0 seconds West 160 feet; thence South 79 degrees 0 minutes 0 seconds East 100 feet; thence North 11 degrees 0 minutes 0 seconds East 179.61 feet; thence North 75 degrees 29 minutes 40 seconds East 878.48 feet to a point in the line of lands of Gasper Polizzi; thence South 41 degrees 56 minutes 04 seconds East 286.54 feet to a point; thence South 59 degrees 40 minutes 13 seconds West

524337.1

848.25 feet to a point; thence South 60 degrees 26 minutes 47 seconds West 1,347.25 feet to a point for a corner; thence North 09 degrees 21 minutes 58 seconds West 941.63 feet to a point; thence North 40 degrees 45 minutes 0 seconds West 398.52 feet to a point in the center line of State Route 191; thence along the center line of said Road, North 24 degrees 10 minutes 0 seconds East 278.20 feet to the point or place of Beginning.

77.     The Corrective Deed was properly executed, notarized and recorded with the Office of the Recorder of Deeds of Wayne County.

78.     As a result of having been conveyed the land described in the First Swingle Parcel, the Second Swingle Parcel and the Corrective Deed, and as a result of Defendants having acquired prescriptive rights from the Swingle family, and as a result of the conveyances from Wells College and Rensselaer Polytechnic Institute, the Defendants own all the land that comprises the Western Shore Strip

79.     On May 22, 2002, the Defendants filed a motion with the Court to add the Western Shore Property Owners as additional Counterclaim Defendants.

80.     With the exception of Barbara and William Hinz, Anothony and Carol Laboranti, James Keegan, John and Kathryn Nalevanko and Edmund and Marie Burges, none of the properties acquired by Deed or long-term lease by the Property Owners adjoin the margin of Lake Ariel at any elevation. Rather, the easterly boundary of their properties adjoins the ALO Strip owned by the Plaintiff which includes West Shore Drive, and is located near the western margin of Lake Ariel.   These Property Owners each have provisions in their deed or their assignment of lease or their chain of title whereby they and their predecessors in

524337.1

title have agreed to lease from the Plaintiff the right to traverse and (with the permission of Plaintiff) erect docks or other structures on that portion of the ALO Strip which abuts their easterly boundary of their respective properties.  These lease provisions are uniform, and are summarized as follows:

(a) access, ingress, and regress across a strip approximately fifty (50) feet in width (including the road known as West Shore Drive);

(b) no fence, building, or obstructions that will impede access;

(c) right to fish in season;

(d) right to erect (with Landlord's approval) a boathouse which may not obstruct the full width of the shore, to be used only by family members and guests, and may not be rented by anyone else;

(e) right to use all roads and streets;

(f) payment of yearly rent to Landlord; and

(g) violation of any provision results in immediate forfeiture.

81.    Any use by the Property Owners of the ALO Strip was pursuant to the mistaken belief that they had the right to do so under the lease provisions.

82.    The Western Shore Strip adjoins the easterly boundary of the ALO Strip, and occupies the land located between the easterly boundary of the ALO Strip and the margin of Lake Ariel at its high and highest water levels.

524337.1

83.    In order to access the waters of Lake Ariel from their properties, the Western Shore Property Owners must traverse the ALO Strip, as well as the Western Shore Strip.

84.    Since December 1, 2001, each of the Western Shore Property Owners has traversed the area between the easterly boundary of their respective properties to the margin of and into Lake Ariel, without the permission of the Defendants or their predecessors in title.

85.    Ariel Land Owners, Inc. filed an Action to Quiet Title bearing Docket Number 1082-1989-Civil in the Court of Common Pleas of the 22nd Judicial District, Wayne County, Pennsylvania, against Joseph Asaro and Elaine Asaro as Defendants (hereinafter referred to as "the Prior Litigation").   A copy of the Complaint filed in the Prior Litigation was introduced into evidence as Exhibit DT _____.

86.    The Prior Litigation was settled pursuant to a written agreement entered into between ALO and Joseph Asaro and Elaine Asaro, dated October 30, 1990 (hereinafter the "Settlement Agreement").   A copy of the Settlement Agreement was admitted into evidence as Exhibit DT_____.

87.    Lori Dring and Nancy Asaro, the Defendants in this action (hereinafter referred to as "Dring/Asaro"), are the children of Joseph and Elaine Asaro, but were not parties to the Prior Litigation, nor were they parties to the Settlement Agreement.

524337.1

88.    The properties which were the subject of the Settlement Agreement were owned by Joseph and Elaine Asaro (the "Joseph/Elaine Properties"), and were located on the easterly border of Mud Pond.

89.    Mark R. Zimmer, Esquire, counsel for ALO in the Prior Litigation, drafted the Settlement Agreement.

90.    Mark R. Zimmer, Esquire, counsel for ALO in the Prior Litigation, prepared the Settlement Agreement to express the intentions of the parties.

91.    Mark R. Zimmer, Esquire included in the Settlement Agreement all of the terms and conditions which the parties had agreed upon in settlement of the Prior Litigation.

92.    Mark R. Zimmer, Esquire, at the time of the settlement of the Prior Litigation, had been practicing as an attorney for over twenty years, in the areas of commercial litigation and real estate law.

93.    Mark R. Zimmer, Esquire has been involved in hundreds of quiet title actions as an attorney.

94.    The Settlement Agreement was meant to apply to ALO and Joseph and Elaine Asaro with regard only to the property owned by Joseph and Elaine Asaro at the time the Settlement Agreement was executed, to wit, the Joseph and Elaine Properties located on the easterly border of Mud Pond.

95.    Joseph Asaro and Elaine Asaro are not grantees under any of the deeds for the First Swingle Parcel, the Second Swingle Parcel or the Western

524337.1

Shore Strip, which were admitted into evidence as Exhibits DT ____, DT ____ , DT _____, DT_____ and DT _____ (hereinafter collectively the "Dring/Asaro Properties"), nor do they hold any legal or equitable interest in the Dring/Asaro Properties.

96.    There is no agreement, either expressed or implied, by Dring/Asaro to grant any interest in or benefit from the Dring/Asaro Properties to Joseph or Elaine Asaro.

97.    At the time the Prior Litigation was instituted, and at the time the Settlement Agreement was executed, Dring/Asaro did not, and do not presently own any interest in the Joseph/Elaine Properties, nor did Dring/Asaro own any real property which bordered upon Lake Ariel, Mud Pond, or the stream connecting these two bodies of water.  The Dring/Asaro Properties are located on the opposite side of Lake Ariel and Mud Pond from the Joseph/Elaine Properties, and are not contiguous with the Joseph/Elaine Properties.

98.    Dring/Asaro acquired the Dring/Asaro Properties for their own benefit, and not as agents or alter egos of Joseph Asaro.

99.    Dring/Asaro was not obligated to purchase the Dring/Asaro Properties for the benefit of Joseph Asaro, and was never under any obligation or duty of loyalty to act for the benefit of Joseph Asaro in purchasing the Dring/Asaro Properties.  Joseph Asaro did not benefit from the purchase of the Dring/Asaro Properties and he has no title to or rights in the Dring/Asaro Properties.

524337.1

100.   Joseph Asaro did not exercise control over Dring/Asaro with regard to the acquisition of the Dring/Asaro Properties.   The decision whether or not to purchase the Dring/Asaro Properties, and the actual purchase of the Dring/Asaro Properties was made by Dring/Asaro for their own benefit.

101.   At the time the Settlement Agreement was entered into, Dring/Asaro had not yet acquired title to the Dring/Asaro Properties, and did not own any other property at Lake Ariel.   The Dring/Asaro Properties were acquired more than six years after the settlement of the Prior Litigation.

102.   The parties did not intend that the Settlement Agreement would be binding upon Joseph and Elaine Asaro's children, who were not parties to the Prior Litigation.

103.   There was no provision in the Settlement Agreement which restricted Joseph and Elaine Asaro, or their children, from acquiring any other properties which bordered upon Lake Ariel.

104.   The Dring/Asaro Properties were on the market for years prior to the purchase by Dring/Asaro.   ALO was aware the Dring/Asaro Properties were for sale, but had no plans to buy any of the Dring/Asaro Properties at the time of purchase by Dring/Asaro.

105.   There was no reliance by ALO, or any change in its position as a result of any of the actions of Dring/Asaro or Joseph Asaro in connection with the acquisition of the Dring/Asaro Properties.

524337.1

106.   By use of an artificial dam, the Plaintiff raises the water level of Lake Ariel and Mud Pond from 1432.5 feet to 1425.9 feet above sea level from March or April of each year through October 31st of each year.

107.   The Plantiff has not posted any "No Trespassing" signage or erected any fences, structures or other barriers along the western shore of Lake Ariel or Mud Pond, or otherwise marked any claimed boundary of its property underneath the waters of Lake Ariel or Mud Pond.

108.   The Plaintiff does not regularly patrol or monitor the use of the waters of Lake Ariel or Mud Pond.

109.   Prior to being contacted by counsel for the Defendants in 1999, Wells College was not aware that it was the owner of any interest in the Western Shore Strip.

110.   Prior to being contacted by counsel for the Defendants in 1999, Rensselaer Polytechnic Institute was not aware that it was the owner of any interest in the Western Shore Strip.

111.   Wells College did not grant the Plaintiff or any of the Counterclaim Defendants any rights to traverse or construct improvements on the Western Shore Strip.

112.   Rensselaer Polytechnic Institute did not grant the Plaintiff or any of the Counterclaim Defendants any rights to traverse or construct improvements on the Western Shore Strip.

524337.1

## CONCLUSIONS OF LAW WITH REGARD TO
## THE PLAINTIFF'S AMENDED COMPLAINT IN QUIET TITLE

1.      The terms of an instrument conveying an interest in property are interpreted by applying general principles of contract law.  <u>Baney v. Eoute</u>, 784 A.2d 132 (Pa.Super.2001).

2.      Thus, when interpreting a deed, entirety of language in deed must be considered.  <u>In re Conveyance of Land Belonging to City of DuBois</u>, 335 A.2d 352, 461 Pa. 161 (1975).

3.      Furthermore, the nature and quantity of interest conveyed must be ascertained from the instrument itself and cannot be orally show in the absence of fraud, accident or a mistake and the court seeks to ascertain not what the parties may have intended by their language, but what is the meaning of the words.  <u>In re Appointing of Viewers to Assess Damages to Property of Covert in North East Tp. Erie County</u>, 409 Pa. 290, 186 A.2d 20 (1962).

4.      It is well established that in construing a deed, all the language thereof must be given effect and, when the language is clear and unambiguous, the intent of the parties must be gleaned solely from the language of the deed.  <u>Id.</u>; <u>see also</u> <u>In re Yasipour</u>, 238 B.R. 289 (Bkrtcy.M.D.Pa. 1999); <u>Wysinski v. Mazzatta</u>, 472 A.2d 680, 325 Pa.Super. 128 (1984).

5.      However, where the deed is not clear and the intention of the parties cannot be construed from the instrument itself, the parties' intentions are to be

524337.1

ascertained from the language of the entire instrument, from the consideration of subject matter and from the conditions existing when it was executed together with surrounding circumstances.  Flaherty v. DeHaven, 448 A.2d 1108, 302 Pa.Super. 412 (1982).

6.     Based upon the well established principles set forth in the cases cited above, in order to determine the extent of the land conveyed to Plaintiff pursuant to Plaintiff's Deed, it is necessary to review the language of the deeds in Plaintiff's chain of title in the context of the conditions existing at the time Plaintiff's predecessor in title obtained ownership of the land described in Plaintiff's Deed.

7.     Because as of December 13, 1859, the date that Plaintiff's predecessor in title purchased Plaintiff's Parcel, the natural elevation of the waters of Lake Ariel and Mud Pond was approximately 1,423.5 feet above sea level, Plaintiff's predecessor in title could not have acquired title to any portion of land extending above the natural margin of the waters of Lake Ariel or Mud Pond.

8.      Thus, because Plaintiff's predecessor in title could not have acquired title to any portion of land extending above the natural margin of the waters of Lake Ariel or Mud Pond, Plaintiff's Deed did not convey to Plaintiff any portion of land extending above the natural margin of the waters of Lake Ariel or Mud Pond, which margin is determined to be at a water elevation of 1423.5 feet above sea level.

524337.1

9.      Therefore, because Plaintiff's Deed did not convey to Plaintiff any portion of land extending above the natural margin of the waters of Lake Ariel or Mud Pond, Plaintiff does not have any legal or equitable ownership interest of any kind in the property lying above a water elevation of 1423.5 feet above sea level.

10.     The description in a deed must be clear and sufficiently precise to enable a surveyor to locate and identify the property.  Marks v. Ligonier Borough, 233 Pa. 372, 378 (1912).  Dickson v. Pennsylvania Power & Light Co., 283 Pa.Super 53, 423 A.2d 711, 712-13 (1980), Plaintiff has a remnant deed and has not introduced evidence of the boundary or dimensions of its property and therefore its deed is not sufficient.

**CONCLUSIONS OF LAW WITH REGARD TO
THE FIRST COUNT SET FORTH IN THE THIRD
AMENDED COUNTERCLAIM (OWNERSHIP OF
SWINGLE TRACT DOWN TO 1423.5)**

11.     The Court has jurisdiction over this matter under 28 U.S.C. § 1332, and the amount in controversy exceeds $75,000.  Memorandum Decision of the Court entered on July 3, 2001.

12.     Plaintiff has no stake, interest or right in, or lien or encumbrance upon, the First Swingle Parcel and the Second Swingle Parcel.

13.     Defendants are entitled to judgment ejecting the Plaintiff from the First Swingle Parcel and the Second Swingle Parcel, and ordering the Plaintiff to

524337.1

permanently remove any dam thereby removing said waters from the First Swingle Parcel and the Second Swingle Parcel.

14.     Plaintiff is forever barred from contesting the Defendants' ownership of and right to possession of the First Swingle Parcel and the Second Swingle Parcel.

15.     Plaintiff's artificial raising of the elevation of the waters of Lake Ariel and Mud Pond was accomplished without the consent of the Defendants or their predecessors in title and is an unauthorized, continuing wrongful trespass on the First Swingle Parcel and the Second Swingle Parcel.

16.     The Defendants are entitled to recover from the Plaintiff compensatory damages for wrongful trespass upon the First Swingle Parcel and the Second Swingle Parcel in the amount of $_____, plus costs to be taxed.

17.     The Defendants are entitled to recover from the Plaintiff punitive damages for wrongful trespass upon the First Swingle Parcel and the Second Swingle Parcel in the amount of $_____.

<u>**CONCLUSIONS OF LAW WITH REGARD TO THE THIRD COUNT SET FORTH IN THE THIRD AMENDED COUNTERCLAIM (OWNERSHIP TO CENTERLINE OF STREAM)**</u>

18.     Ownership of a fee interest in land, the boundary of which is defined by reference to a non-navigable stream, results in ownership to the center line of the stream.  See <u>Shaffer v. Baylor's Lake Ass'n</u>, 392 Pa. 493, 141 A.2d 583

(1958); <u>Miller v. Lutheran Conference & Camp Ass'n</u>, 331 Pa. 241, 200 A.2d 646

(1938); <u>Matthews v. Bagnik</u>, 157 Pa.Super. 115, 41 A.2d 875 (1945).

19.    The boundary of that portion of the First Swingle Parcel, the Second

Swingle Parcel and the Western Shore Strip extends to the center line of the

stream.

20.    Plaintiff has no stake, interest or right in, or lien or encumbrance

upon, the First Swingle Parcel, Second Swingle Parcel and Western Shore Strip

which are described in the Deeds admitted into evidence as DT-_____, DT-_____

_____ and DT-_____ as extended to the center line of the aforementioned

stream.

21.    Defendants have perfect title to and are the owners in fee simple of

the First Swingle Parcel, Second Swingle Parcel and Western Shore Strip

described in the Deeds admitted into evidence as Exhibit DT-_____,   DT-_____

and DT-_____ as extended to the center line of the aforementioned stream.

22.    Plaintiff and Counterclaim Defendants are forever barred from

contesting the ownership and right to possession of Defendants' lands described in

the Deeds admitted into evidence as Exhibit DT-_____, DT-_____ and

DT-_____ as extended to the center line of the aforementioned stream.

23.    Defendants are entitled to exclusive possession and control of the

aforementioned stream to the center line of the stream.

<u>CONCLUSIONS OF LAW WITH REGARD TO</u>

## THE FOURTH COUNT SET FORTH IN THE THIRD AMENDED COUNTERCLAIM (PRESCRIPTIVE RIGHTS FROM SWINGLE

24.     Defendants' predecessors in title perfected prescriptive rights to use and enjoy the waters of Lake Ariel and Mud Pond and the stream connecting them, as well as land above an elevation of 1423.5 feet above sea level, by virtue of constructing and maintaining a fence upon and through, and watering cattle in the waters of Lake Ariel and Mud Pond and the stream connecting them and use of all land above 1423.5 feet above sea level for a continuous period of more than twenty-one (21) years in an open, visible, notorious and hostile manner.

25.     The Defendants' predecessors in title perfected prescriptive rights to use and enjoy the waters of Lake Ariel and Mud Pond by virtue of fishing, boating, swimming and trapping on and in the waters of Lake Ariel and Mud Pond and the stream connecting them for a period of more than twenty-one (21) years in a continuous, open, notorious, visible and hostile manner.

26.     The nature of an easement, whether it is seasonal, periodical, or for all periods of the year, the frequency and the extent of the user, its definiteness, and its location in city or rural districts are important factors in a determination of whether an easement exists and exactly what rights have been acquired thereunder.  Shaffer v. Baylor's Lake Association, 141 A.2d 583, 587, 392 Pa. 493, 498 (1958).

524337.1

27.   A prescriptive easement is created by adverse, open, continuous, notorious and uninterrupted use of land for 21 years.  Martin v. Sun Pipe Line Co., 666 A.2d 637, 640 (Pa. 1995) (Citation omitted).

28.   The prescriptive rights acquired by the Defendants' predecessors in title are as follows:

a.   Maintenance of a fence which can extend approximately 75 feet into waters of Mud Pond from the westerly border of the Defendants' property described in the Deed admitted into evidence as Exhibit DT_____ (the First Swingle Parcel)  in the location depicted on the survey marked as Exhibit DT ____ in evidence.

b.   Watering of cattle in Mud Pond, Lake Ariel and the stream between those two bodies of water.

c.   Fishing the waters of Mud Pond, Lake Ariel and the stream connecting Mud Pond with Lake Ariel.

d.   Swimming in the waters of Mud Pond and Lake Ariel.

e.   Boating on the waters of Lake Ariel, Mud Pond and the stream connecting Lake Ariel to Mud Pond.

f.   Trapping fur-bearing animals in Lake Ariel, Mud Pond, and the stream which connects Lake Ariel to Mud Pond.

g.   Ice-skating on Lake Ariel and Mud Pond.

524337.1

h.      Hunting in the marshy areas surrounding Lake Ariel, Mud Pond and the stream connecting Lake Ariel to Mud Pond.

i.      Use of all of the land down to the margin of Mud Pond and Lake Ariel at a water elevation of 1423.5 feet above sea level.

29.     By Memorandum decision dated September 30, 2005, the Court determined that any prescriptive rights which had been acquired by the Defendants' predecessors in title, had been conveyed to the Defendants by virtue of the Deeds admitted into evidence as Exhibits DT-_____, DT-_____ and DT-_____.

30.     The prescriptive rights acquired by the Defendants' predecessors in title run with the lands which were conveyed to the Defendants and are described in the Deeds admitted into evidence as DT-_____, DT-_____ and DT-_____.

31.     The Defendants are entitled to exercise and enjoy the prescriptive rights described above, and the Plaintiff will be enjoined and restrained from interfering with the exercise of those prescriptive rights.

32.     Defendants are entitled to compensatory damages in the amount of $_____, and punitive damages in the amount of $_____ for the Plaintiff's interference with the exercise of these prescriptive rights, plus costs to be taxed.

## CONCLUSIONS OF LAW WITH REGARD TO
## THE FIFTH COUNT OF THE THIRD AMENDED COUNTERCLAIM
## (OWNERSHIP OF THE WESTERN SHORE STRIP)

33.     The filing of the Defendant's Motion to add the Western Shore Property Owners on May 22, 2002 stops the accumulation of any 21 year adverse possession, prescriptive easement period that the West Shore Property Owners may have been accumulating. Brennon v. Manchester Crossings, Inc., 708 A.2d 815 (Pa. Super. 1998); Reed v. Wolyniec, 323 Pa. Super. 550, 471 A.2d (1983); *Restatement of Property* § 459(2).

34.     Any property not specifically mentioned in a will devolved under the residuary clause of the will to the residuary devisees.

35.     Title to property which is specifically reserved from conveyance, remains in the grantor and can only be conveyed by the grantor.

36.     The legal description contained in a deed is sufficient to identify the property if a reasonably prudent surveyor could locate the property based upon the description.

37.     The reservation of the area between the natural margin of Lake Ariel and Mud Pond and the margin of the highest flow of the water consists of the area which is depicted in the survey which was admitted into evidence as DT-___,   the description of which is shown on and described in Exhibit 6 to the Survey Locations, Measurements, Plans, Maps and Report prepared by Schoenagel & Schoenagel dated November 10, 2004 which was admitted into evidence as DT-

524337.1

_____.   This reserved area also extends along the entire frontage of the First Swingle Parcel, and such area is included in the boundary of such property, which is shown on Exhibit 5 to Exhibit DT_____.   The description of the First Swingle Parcel and the Second Swingle Parcel is as follows, inclusive of the portion of the Western Shore Strip which adjoins such property is as follows:

BEGINNING at the point of intersection of the 41st bearing and distances of the 1423.5 elevation line traverse and the extension of line number 1 of the Dring and Asaro Tract as described in Deed Book Volume 1176 at page 0197; thence South 17 degrees 39 minutes 22 seconds East 5.35 feet to an original corner in the said Dring and Asaro Tract; thence along the boundary of the lands of the Dring and Asaro Tract the following nineteen courses and distances (bearings of the magnetic meridian as established by the Little Lake Development survey):

1) South 17 degrees 39 minutes 22 seconds East 299.13 feet to a corner;
2) North 89 degrees 45 minutes 26 seconds West 780.83 feet to a corner;
3) North 53 degrees 52 minutes 12 seconds West 487.83 feet to a corner;
4) North 72 degrees 45 minutes 09 seconds East 104.27 feet to a corner;
5) North 17 degrees 14 minutes 51 seconds West 264.00 feet to a corner;
6) North 50 degrees 13 minutes 13 seconds West 165.51 feet to a corner;
7) North 14 degrees 55 minutes 15 seconds East 547.01 feet to a corner;
8) North 46 degrees 26 minutes 54 seconds East 640.04 feet to a corner;
9) North 17 degrees 42 minutes 24 seconds West 281.13 feet to a corner;
10) North 64 degrees 04 minutes 23 seconds West 242.00 feet to a corner;
11) North 22 degrees 45 minutes 16 seconds East 204.91 feet to a corner;
12) South 42 degrees 09 minutes 44 seconds East 398.52 feet to a corner;
13) South 10 degrees 46 minutes 42 seconds East 941.63 feet to a corner;
14) North 59 degrees 02 minutes 03 seconds East 1347.25 feet to a corner;
15) North 58 degrees 15 minutes 29 seconds East 848.25 feet to a corner;
16) South 43 degrees 20 minutes 48 seconds East 287.77 feet to a corner;
17) South 44 degrees 18 minutes 20 seconds West 246.28 feet to a corner;
18) South 82 degrees 01 minutes 10 seconds West 98.71 feet to a corner; and
19) South 39 degrees 07 minutes 43 seconds East 281.80 feet passing an iron pin at 238.85 feet to a point of intersection with the 1423.5 elevation line traverse; thence along the 1423.5 elevation line traverse (Bearings of the magnetic meridian as established in the survey of the Little Lake Development) the following forty-one courses and distances:

524337.1

1) South 43 degrees 58 minutes 58 seconds West 37.81 feet to a corner;
2) South 31 degrees 11 minutes 41 seconds West 58.48 feet to a corner;
3) South 23 degrees 59 minutes 56 seconds West 69.21 feet to a corner;
4) South 42 degrees 25 minutes 05 seconds West 62.22 feet to a corner;
5) South 35 degrees 09 minutes 21 seconds West 71.37 feet to a corner;
6) South 67 degrees 31 minutes 42 seconds West 89.31 feet to a corner;
7) South 59 degrees 31 minutes 51 seconds West 83.31 feet to a corner;
8) South 49 degrees 23 minutes 44 seconds West 72.35 feet to a corner;
9) South 53 degrees 24 minutes 14 seconds West 81.65 feet to a corner;
10) North 85 degrees 01 minutes 01 seconds West 88.90 feet to a corner;
11) South 68 degrees 46 minutes 34 seconds West 84.07 feet to a corner;
12) South 31 degrees 48 minutes 41 seconds West 87.84 feet to a corner;
13) South 31 degrees 20 minutes 44 seconds West 89.58 feet to a corner;
14) South 44 degrees 54 minutes 46 seconds West 11.56 feet to a corner;
15) South 69 degrees 00 minutes 24 seconds West 32.39 feet to a corner;
16) South 81 degrees 06 minutes 13 seconds West 58.32 feet to a corner;
17) South 84 degrees 16 minutes 39 seconds West 104.21 feet to a corner;
18) South 58 degrees 16 minutes 47 seconds West 23.52 feet to a corner;
19) South 89 degrees 27 minutes 29 seconds West 36.47 feet to a corner;
20) South 80 degrees 58 minutes 11 seconds West 16.54 feet to a corner;
21) South 79 degrees 10 minutes 12 seconds West 35.41 feet to a corner;
22) North 42 degrees 45 minutes 31 seconds West 47.34 feet to a corner;
23) North 60 degrees 21 minutes 01 seconds West 38.77 feet to a corner;
24) North 46 degrees 07 minutes 28 seconds West 32.11 feet to a corner;
25) North 43 degrees 06 minutes 19 seconds West 44.30 feet to a corner;
26) North 66 degrees 13 minutes 58 seconds West 100.71 feet to a corner;
27) North 84 degrees 42 minutes 02 seconds West 94.30 feet to a corner;
28) South 74 degrees 01 minutes 25 seconds West 120.70 feet to a corner;
29) South 60 degrees 23 minutes 27 seconds West 122.18 feet to a corner;
30) South 27 degrees 48 minutes 01seconds West 98.46 feet to a corner;
31) South 19 degrees 13 minutes 07 seconds West 94.00 feet to a corner;
32) South 27 degrees 52 minutes 46 seconds West 7.87 feet to a corner;
33) South 01 degrees 26 minutes 50 seconds East 106.38 feet to a corner;
34) South 23 degrees 26 minutes 43 seconds West 63.45 feet to a corner;
35) South 09 degrees 58 minutes 40 seconds West 76.83 feet to a corner;
36) South 10 degrees 03 minutes 04 seconds West 50.10 feet to a corner;
37) South 46 degrees 29 minutes 53 seconds West 28.53 feet to a corner;
38) South 21 degrees 01 minutes 08 seconds West 61.94 feet to a corner;
39) South 55 degrees 15minutes 32 seconds West 32.16 feet to a corner;
40) South 12 degrees 38 minutes 59 seconds East 59.90 feet to a corner; and

524337.1

41) South 84 degrees 58 minutes 33 seconds East 100.83 feet to the point and place of BEGINNING.

38.     Lori Dring and Nancy Asaro have perfect title to and are the owners in fee of the Western Shore Strip described above that was reserved by Edward W. Weston.

39.     Plaintiff and Counterclaim Defendants have no stake, interest or right in, or lien or encumbrance upon, the Western Shore Strip.

40.     The term "natural margin" when used in a deed referring to the boundary of a non-navigable lake, denotes the shore line of the lake when the water is at a level which is not impeded by an artificial dam.

41.     The term "highest flow of water" is synonymous with the term "high water mark" when used in a deed making reference to the boundary of a non-navigable lake.  This term refers to the shore line of the lake when the water level of the lake is impeded by an artificial dam.

42.     Defendants are entitled to judgment ejecting the Plaintiff and the Counterclaim Defendants from the Western Shore Strip, and ordering the Plaintiff to permanently remove any dam and cause the waters of Lake Ariel and Mud Pond to be returned to an elevation of 1,423.5 feet above sea level, thereby removing said waters from the Western Shore Strip.

43.     The Defendants are entitled to judgment ejecting the Counterclaim Defendants from the Western Shore Strip, and ordering the Counterclaim

524337.1

Defendants to permanently remove any improvements or structures erected on or over the Western Shore Strip and barring the Counterclaim Defendants from entering upon or crossing the Western Shore Strip, plus costs to be taxed.

44.     The Defendants are entitled to recover from the Plaintiff compensatory damages for wrongful trespass upon the Western Shore Strip in the amount of $_____.

45.     The Defendants are entitled to recover from the Plaintiff punitive damages for wrongful trespass upon the Western Shore Strip in the amount of $_____.

46.     Any party who occupies property as a tenant may not claim adverse possession since their occupancy of the property as a tenant under a lease means that their use of the property is "permissive" rather than "hostile", and therefore lacks one of the essential elements of adverse possession. Flannery v. Stump, 786 Pa. Super. 255 (2001).

47.     The elements that one needs to satisfy in order to acquire prescriptive rights are the same as the elements of adverse possession. Morning Call, Inc. v. Bell Atlantic Pennsylvania, Inc., 761 A.2d 139 (2000); POA Co. v. Findlay Twp. Zoning Hearing Board, 713 A.2d 70, 551 Pa. 689 (1998); Martin v. Sun Pipe Line Co., 666 A.2d 637, 542 Pa. 281 (1995); McCormick v. Camp Pocono Ridge, Inc., 781 F. Supp. 328 (1991).

524337.1

48.     Therefore, the Property Owners, as tenants, did not acquire any prescriptive rights over the Western Shore Strip.

## CONCLUSIONS OF LAW WITH REGARD TO THE SECOND SEPARATE DEFENSE SET FORTH IN THE PLAINTIFF'S ANSWER TO THE THIRD AMENDED COUNTERCLAIM

49.     A fee simple absolute is a form of ownership in which a party has unlimited power to sell, transfer, alienate, or bequeath the property in any lawful manner.  Summ. Pa.Jur.2d, Property, § 5.5.

50.     Dring/Asaro are the owner in fee simple absolute of the real property described in Wayne County Deed book 1176 at page 0197; Deed Book 1815 at page 0149 and Deed Book 1418 at page 139; Deed Book 1931 at page 204; and Deed Book 1931 at page 209.

## (CONCLUSIONS OF LAW WITH REGARD TO THE THIRD SEPARATE DEFENSE SET FORTH IN THE PLAINTIFF'S ANSWER TO THE THIRD AMENDED COUNTERCLAIM

# (WITHDRAWN)

## CONCLUSIONS OF LAW WITH REGARD TO THE FOURTH SEPARATE DEFENSE SET FORTH IN THE PLAINTIFF'S ANSWER TO THE THIRD AMENDED COUNTERCLIAM

51.     One who claims ownership of real property by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of land for a period of twenty-one years.  Croyle v. Dellape, 2003 Pa.Super 328 (2003).

524337.1

52.     A use of land is adverse when one uses it at will without seeking permission or encountering objection.  <u>Loudenslager v. Mosteller</u>, 307 A.2d 286 (Pa. 1973).

53.     Use of land is open and notorious when the use is visible and frequent and provides notice to other in the community, including the owner of the land. <u>Digirolmao v. Philadelphia Gun Club,</u> 89 A.2d. 357 (Pa. 1952).

54.      For the use of land to be considered uninterrupted, it need not be continuous, but it must be such to evince a "subtle course of conduct that indicates an attitude of mind on the part of those using the property that such use is the exercise of a property right".  <u>Moore v. Duran</u>, 687 A.2d 822 (Pa. Super. Ct. 1996).

55.     Plaintiff has not used the First Swingle Parcel, the Second Swingle Parcel, the Corrective Deed Area or the Western Shore Strip in a manner which satisfies the elements of adverse possession, and therefore has not acquired title to any of these properties.

### <u>CONCLUSIONS OF LAW WITH REGARD TO THE FIFTH SEPARATE DEFENSE SET FORTH IN THE PLAINTIFF'S ANSWER TO THE THIRD AMENDED COUNTERCLAIM (AGENCY/ALTER EGO DEFENSE)</u>

56.     ALO alleges in its Fifth Separate Defense that Dring/Asaro were acting as the agents or alter ego of Joseph Asaro, are bound by the provisions of the Settlement Agreement, and are therefore barred from asserting the claims they have raised in this litigation.

524337.1

57.     The elements of agency are a manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking, and the understanding of the parties that the principal is to be in control of the undertaking. Scott v. Purcell, 490 Pa. 109, 117 (1980), quoting, Restatement (2d) of Agency, §1, Comment B, (1958).

58.     Agency results only if there is an agreement for the creation of a fiduciary relationship, with control by the principal.  Smalich v. Westfall, 440 Pa. 409, 414 (1971).

59.     The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence. Scott v. Purcell, 490 Pa. 109, 117 (1980).  Volunteer Fire Company of New Buffalo v. Hilltop Oil Company, 412 Pa. Super 146 (1992).

60.     A mere showing that one person does an act for another does not establish agency, and the inquiry for actual agency focuses on the day-to-day control over the matter of the purported agent's performance, i.e., control is the hallmark of an agency relationship.  Myszkowski v. Penn Stroud Hotel, Inc., 430 Pa. Super 315, 320 (1993).

61.     The element of continuous subjection to the will of the principal distinguishes the agency agreement from other agreements.   Restatement (2d) of Agency, §1, Comment B, (1958).

524337.1

62.     A contract is not rendered ambiguous by the mere fact that the parties do not agree upon its proper construction.  <u>Ryan Homes, Inc. v. Home Indemnity Co.</u>, 436 Pa. Super 342, 346 (1994).

63.     Where contract language is clear and unambiguous, the Court shall interpret the agreement as expressed, rather than as silently intended.  <u>Steuart v. McChesney</u>, 498, Pa. 45, 49 (1982).

64.     The Court may not modify the plain meaning of the words of a contract under the guise of interpretation.  <u>Trumpp v. Trumpp</u>, 351 Pa.Super 205, 209 (1985).

65.     When the terms of a written contract are clear, the Court will not rewrite the terms to achieve a construction in conflict with the accepted and plain meaning of the language used.  <u>Litwack v. Litwack</u>, 289 Pa.Super 405, 408 (1981).

66.     Any ambiguities in the interpretation of a written agreement should be resolved against the drafter, <u>Rudolph v. Pennsylvania Blue Shield</u>, 553 Pa. 9, 17 (1998), which in this case is ALO.

67.     The terms of a contract are deemed clear when the contractual language is subject to only one reasonable interpretation.  <u>Ramada Franchise Sys., Inc. v. Jai Shyam, Inc.</u>, No. 03-4303, 2004 U.S. App. LEXIS 20563, *4 (3d.Cir. 2004) (Citations Omitted).

68.    Dring/Asaro are not bound by the provisions of the Settlement Agreement, and the terms of the Settlement Agreement do not apply to the Dring/Asaro Properties.

69.    The Defendants were not acting as the agents or alter ego of Joseph Asaro when they purchased the Dring/Asaro Properties, and the claims of the Defendants are not barred by the Settlement Agreement.

**CONCLUSIONS OF LAW WITH REGARD TO
THE SIXTH SEPARATE DEFENSE SET FORTH
IN THE PLAINTIFF'S ANSWER TO THE
THIRD AMENDED COUNTERCLAIM**

# **(WITHDRAWN)**

**CONCLUSIONS OF LAW WITH REGARD TO
THE SEVENTH SEPARATE DEFENSE SET FORTH
IN THE PLAINTIFF'S ANSWER TO THE
THIRD AMENDED COUNTERCLAIM**

70.    The Statute of Limitations for the possession of real property must be commenced within twenty-one years.  42 Pa.C.S.A. §5530.

71.    The Defendants acquired the First Swingle Parcel, the Second Swingle Parcel and the Western Shore Strip commencing in 1996, and therefore the claims set forth in the Third Amended Counterclaim are not barred by the Statute of Limitations.

524337.1

## CONCLUSIONS OF LAW WITH REGARD TO
## THE EIGHTH SEPARATE DEFENSE SET FORTH
## IN THE PLAINTIFF'S ANSWER TO THE
## THIRD AMENDED COUNTERCLAIM

## (WITHDRAWN)

## CONCLUSIONS OF LAW WITH REGARD TO
## THE NINTH SEPARATE DEFENSE SET FORTH
## IN THE PLAINTIFF'S ANSWER TO THE
## THIRD AMENDED COUNTERCLAIM

## (WITHDRAWN)

## CONCLUSIONS OF LAW WITH REGARD TO
## THE TENTH SEPARATE DEFENSE SET FORTH
## IN THE PLAINTIFF'S ANSWER TO THE
## THIRD AMENDED COUNTERCLAIM

72.    "Laches" will bar any claim whenever it appears that under the circumstances, a party is chargeable with want of due diligence in failing to institute or prosecute and because of that laxity the assertion the claim would be unjust. Fidelity & Cas. Co. of N.Y. v. Kizis, 363 Pa. 575 (1950).  Laches is the equitable doctrine that prevents recovery when a party asserting the defense can show inexcusable delay in instituting suit and prejudice to him resulting from such delay.  Federal Savings Bank v. Keystone Mortgage, Inc., 923 F.Supp. 693 (E.D. Pa. 1996).  Laches consists of two elements: inexcusable delay in instituting suit;

and prejudice resulting to a party from such delay; and its existence depends on the equities of the case and not merely upon the lapse of time. <u>Loverich v. Warner Co.</u>, 118 F.2d 690 (Pa. 1941).

73.    An acceptable excuse for delay under the doctrine of laches, is the concealment of facts giving rise to the cause of action by the party asserting the defense. <u>Reading v. Austin</u>, 816 F.Supp. 351 (E.D. Pa. 1993). Application of the equitable doctrine of laches depends on whether under circumstances of a particular case, the complaining party is guilty of want of due diligence in failing to institute his action which results in prejudice to the other party. <u>Wilson v. King of Prussia Enterprises, Inc</u>., 422 Pa. 128 (1966).

74.    Plaintiff had the ability to bring forth an Action for Quiet Title prior to Defendants purchase of the Western Shore Strip. Plaintiff failed to do so and therefore, is barred from relying on the doctrine of laches, as Plaintiff should have known by virtue of recorded deeds that it did not own the Western Shore Strip.

75.    Defendants cannot be barred by the doctrine of laches, as Defendants brought forth the Counterclaim within a timely fashion. The Defendants brought forth the action within twenty-one years from their purchase of the Western Shore Strip.

76.    Though the usual Statute of Limitations is not by its own force binding upon court of equity, a court asked for equitable relief will, in general look to the corresponding legal Statute of Limitations, if any, by the way of analogy.

524337.1

United National Insurance Company v. J. H. France Refractory's Company, 542 Pa. 432 (1995).

77.     Considering the Statute of Limitations for adverse possession and/or a prescriptive easement is twenty-one years, the Defendants are not barred by laches, as their Counterclaim was filed within the twenty-one year period.


**CONCLUSIONS OF LAW WITH REGARD TO
THE ELEVENTH SEPARATE DEFENSE SET FORTH
IN THE PLAINTIFF'S ANSWER TO THE
THIRD AMENDED COUNTERCLAIM**

# **(WITHDRAWN)**


**CONCLUSIONS OF LAW WITH REGARD TO
THE TWELFTH SEPARATE DEFENSE SET FORTH
IN THE PLAINTIFF'S ANSWER TO THE
THIRD AMENDED COUNTERCLAIM**

78.     A fee simple is a form of ownership in which a party has unlimited power to sell, transfer, alienate or bequeath the property in any lawful manner. Summ. Pa.Jur.2d. Property, §5.5.

79.     Non-use of real property does not constitute abandonment.  Pocono Springs Civic Association, Inc. v. Joseph W. Mackenzie, 446 Pa.Super 445(1995).

80.     The law of abandonment in Pennsylvania requires an owner to have voluntarily relinquished all right, title, claim and possession with the intention of terminating his ownership, but without vesting it in any other person and with the

524337.1

intention of not reclaiming further possession or reassuming ownership, possession or enjoyment of said property.  Commonwealth v. Wetmore, 301 Pa.Super. 370 (1982).

81.     Since a fee simple owner of property does not have to assert their right, title or interest in said property, Defendants and their predecessors in title (Wells and RPI) were not required to claim an interest in their property.

82.     Plaintiff had the duty and burden to establish ownership rights in the property by claiming adverse possession and commencing an action to Quiet Title.

83.     At no time did Wells, RPI, the Defendants or their predecessors in title abandon the property owned by the Defendants, and therefore are the rightful owners and did not have an obligation to claim rights to their property.

84.     Any prejudice to the Property Owners which arose concerning this property is a result of Plaintiff leasing property to the Property Owners which it does not own.


## CONCLUSIONS OF LAW WITH REGARD TO THE THIRTEENTH and FOURTEENTH  SEPARATE DEFENSE SET FORTH IN THE PLAINTIFF'S ANSWER TO THE THIRD AMENDED COUNTERCLAIM

85.     A prescriptive easement is created by adverse, open, common, notorious and uninterrupted use of land for twenty-one years.  Martin v. Sun Pipe Line Co., 666 A.2d 637 (Pa.1995).

524337.1

86.     A use of land is adverse when one uses it at will without seeking permission or encountering objection.  Loudenslager v. Mosteller, 307 A.2d 286 (Pa. 1973).

87.     Use of land is open and notorious when the use is visible and frequent and provides notice to others in the community, including the owner of the land. Digirolmao v. Philadelphia Gun Club, 89 A.2d 357 (Pa 1952).

88.     For the use of land to be considered uninterrupted, it need not be continuous, but it must be such to evince a "subtle course of conduct that indicates an attitude of mind on the part of those using the property that such use is the exercise of a property right".  Moore v. Duran, 687 A.2d 822 (Pa.Super 1996).

89.     The Plaintiff has not used the First Swingle Parcel, the Second Swingle Parcel, the Corrective Deed Area or the Western Shore Strip in a manner which satisfies the elements of a prescriptive easement, and therefore the Plaintiff has not acquired any prescriptive easements over any portion of these properties.

90.     Any party who occupies property as a tenant may not claim adverse possession since their occupancy of the property as a tenant under a lease means that their use of the property is "permissive" rather than "hostile", and therefore lacks one of the essential elements of adverse possession. Flannery v. Stump, 786 Pa. Super. 255 (2001).

91.     The elements that one needs to satisfy in order to acquire prescriptive rights are the same as the elements of adverse possession. Morning Call, Inc. v.

524337.1

Bell Atlantic Pennsylvania, Inc., 761 A.2d 139 (2000); POA Co. v. Findlay Twp.

Zoning Hearing Board, 713 A.2d 70, 551 Pa. 689 (1998); Martin v. Sun Pipe Line

Co., 666 A.2d 637, 542 Pa. 281 (1995); McCormick v. Camp Pocono Ridge, Inc.,

781 F. Supp. 328 (1991).

92.     Therefore, the Property Owners, as tenants, did not acquire any

prescriptive rights over the Western Shore Strip

## CONCLUSIONS OF LAW WITH REGARD TO
## THE FIFTEENTH SEPARATE DEFENSE SET FORTH
## IN THE PLAINTIFF'S ANSWER TO THE
## THIRD AMENDED COUNTERCLAIM

93.     A fee simple is a form of ownership in which a party has unlimited

power to sell, transfer, alienate or bequeath the property in any lawful manner.

Summ. Pa. Jur.2d. Property, §5.5.

94.     Non-use of real property does not constitute abandonment.  Pocono

Springs Civic Association, Inc. v. Joseph W. Mackenzie, 446 Pa.Super 445 (1995).

95.     The law of abandonment in Pennsylvania requires an owner to have

voluntarily relinquished all right, title, claim and possession with the intention of

terminating his ownership, but without vesting it in any other person, and with the

intention of not reclaiming further possession or reassuming ownership, possession

or enjoyment of said property.  Commonwealth v. Wetmore, 301 Pa.Super 370

(1982).

524337.1

96.     Since a fee simple owner of property does not have to assert their right, title or interest in said property, Defendants and their predecessors in title were not required to affirmatively claim any interest in their property.

97.     Plaintiff had the duty and burden to establish ownership rights in the First Swingle Parcel, the Second Swingle Parcel, the Corrective Deed Area and the Western Shore Strip by proving adverse possession and commencing an action to quiet title to these properties.

98.     At no time did Defendants or their predecessors in title abandon these properties, and therefore the Defendants are the rightful owners, with fee simple title to these properties.

99.     Any prejudice to the Property Owners is the result of the Plaintiff purporting to lease to the Property Owners' property which it did not own.

**CONCLUSIONS OF LAW WITH REGARD TO
THE SIXTEENTH SEPARATE DEFENSE SET FORTH
IN THE PLAINTIFF'S ANSWER TO THE
THIRD AMENDED COUNTERCLAIM**

# (WITHDRAWN)

**CONCLUSIONS OF LAW WITH REGARD TO
THE SEVENTEENTH SEPARATE DEFENSE SET FORTH
IN THE PLAINTIFF'S ANSWER TO THE
THIRD AMENDED COUNTERCLAIM**

# (WITHDRAWN)

524337.1

**CONCLUSIONS OF LAW WITH REGARD TO
THE EIGHTEENTH SEPARATE DEFENSE SET FORTH
IN THE PLAINTIFF'S ANSWER TO THE
THIRD AMENDED COUNTERCLAIM**

# (WITHDRAWN)

**CONCLUSIONS OF LAW WITH REGARD TO
THE NINETEENTH SEPARATE DEFENSE SET FORTH
IN THE PLAINTIFF'S ANSWER TO THE
THIRD AMENDED COUNTERCLAIM**

100.   The Defendants clearly set forth claims for compensatory, punitive damages or attorneys fees and costs in each Count of their Third Amended Counterclaim, and therefore, no conclusions of law are necessary.

**CONCLUSIONS OF LAW WITH REGARD TO
THE TWENTIETH SEPARATE DEFENSE SET FORTH
IN THE PLAINTIFF'S ANSWER TO THE
THIRD AMENDED COUNTERCLAIM**

# (WITHDRAWN)

524337.1

### CONCLUSIONS OF LAW WITH REGARD TO
### THE TWENTY-FIRST SEPARATE DEFENSE SET FORTH
### IN THE PLAINTIFF'S ANSWER TO THE
### THIRD AMENDED COUNTERCLAIM

101.   Plaintiff's twenty-first defense fails by virtue of a plain reading of the terms of the Indemnification Agreements, which Agreements do not bar the Defendants from asserting a claim against the Plaintiff or the Property Owners.

### CONCLUSIONS OF LAW WITH REGARD TO
### THE TWENTY-SECOND SEPARATE DEFENSE SET FORTH
### IN THE PLAINTIFF'S ANSWER TO THE
### THIRD AMENDED COUNTERCLAIM

102.   To be deemed a bona fide purchaser of real property one must pay valuable consideration, have no notice of the outstanding rights of others and act in good faith.  Poffenberger v. Goldstein, 766 A.2d 1037 (Pa. Comm.Ct. 2001).

103.   The Property Owners did not pay any consideration to acquire title to the Western Shore Strip but rather paid rent to the Plaintiff under the mistaken belief that the Plaintiff owned the Western Shore Strip, and thus are not bona fide purchasers of the Western Shore Strip.

104.   Plaintiff is not a bona fide purchaser of the Western Shore Strip because the Western Shore Strip was conveyed out of their chain of title as shown by deeds of record with the Office of Recorder of Deeds of Wayne County which provided Plaintiff with notice of such conveyances.

524337.1

## <u>CONCLUSIONS OF LAW WITH REGARD TO<br>THE TWENTY-THIRD SEPARATE DEFENSE SET FORTH<br>IN THE PLAINTIFF'S ANSWER TO THE<br>THIRD AMENDED COUNTERCLAIM</u>

# <u>(WITHDRAWN)</u>

Respectfully submitted,

ROSENN, JENKINS & GREENWALD, L.L.P.

<u>*/s/ Garry S. Taroli*          </u>.
Garry S. Taroli, Esquire
Attorney I.D. No. 30159
15 South Franklin Street
Wilkes-Barre, PA 18711
Phone: (570) 826-5662
Fax:  (570) 831-7212

AND

Michael Profita, Esquire
Profita & Associates, LLC
106 Grand Avenue
Englewood, NJ  07631
Phone: (201)227-1114
Fax:  (201)227-1115

Attorneys for Defendants,
  Lori Dring and Nancy Asaro

524337.1