```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


Ariel Land Owners, et al.,  :
          Plaintiffs        :
                            :
                            :
      vs                    :      3:01-CV-00294
                            :
                            :
                            :
Lori Dring, et al.,         :
          Defendants        :
                            :



    BEFORE:            Honorable A. Richard Caputo

    PLACE:             Wilkes-Barre, Pennsylvania

    PROCEEDINGS:       Oral Argument on
                       Motion for Reconsideration

    DATE:              Monday, July 28, 2008



APPEARANCES:

For the Plaintiff:   Joseph A. O'Brien, Esq.
                     Karoline Mehalchick, Esq.
                     Oliver, Price & Rhodes
                     1212 South Abington Road
                     Clarks Summit, PA  18411

For the Defendants:  Michael A. Profita, Esq.
                     Profita & Associates
                     106 Grande Avenue
                     Englewood, NJ  07631

                     Garry S. Taroli, Esq.
                     Rosenn, Jenkins & Greenwald, LLP
                     15 South Franklin Street
                     Wilkes-Barre, PA  18711
```

```
 1                    (1:35 p.m., convene.)
 2              THE COURT:  Okay.  We're here on a motion
 3   for reconsideration.  I asked for oral argument.  So are
 4   we ready?
 5              MR. PROFITA:  Yes, Judge.
 6              THE COURT:  Nice to see you.  How are you
 7   doing?
 8              MR. PROFITA:  I'm doing fine, Judge, thank
 9   you.
10              THE COURT:  Good.
11              MR. PROFITA:  Michael Profita appearing on
12   behalf of the Defendants Lori Dring and Nancy Assaro.
13   Good afternoon, Judge.  We had filed a motion to
14   reconsider based upon two grounds.  The first ground is
15   that we are requesting that the judgment that was
16   entered in the matter be amended so that judgment is
17   entered in favor of the defendants on Count 1 of the
18   amended complaint, as your Honor specifically found that
19   ALO did not prove record of title to Lake Ariel or Mud
20   Pond.
21              And in Count 1 of the complaint, the amended
22   complaint, the allegation was that they held title up to
23   an elevation of 1425.9 feet above sea level by virtue of
24   the deed from Schrader and Huss.  And it's our position
25   that since they failed to prove that we are entitled to
```

```
 1   have the judgment reflect that, and therefore act as res
 2   judicata and foreclose any future litigation by ALO or
 3   their successors claiming the record of title against
 4   Dring and Asaro.
 5              THE COURT:  And you think that -- I found
 6   that they had title by virtue of adverse possession and
 7   -- a combination, adverse possession and an easement.
 8              MR. PROFITA:  Correct, Judge.
 9              THE COURT:  And you're concerned that the
10   fact that I didn't make -- or didn't enter a judgment on
11   the issue of record of title, that somehow they can
12   still pursue an action regarding record of title?
13              MR. PROFITA:  Correct, Judge.  As they point
14   out in their brief, an opinion doesn't constitute a
15   judgment, even though it contains findings of fact and
16   conclusions of law, and the judgment finally fixes the
17   respective rights of parties.  So, it's our position
18   that in order to have the preclusive effect of your
19   finding that they failed to prove record of title, which
20   was the allegation of Count 1 of the amended complaint,
21   that that would foreclose any future claim by ALO or its
22   successors, regardless of, you know, your other finding,
23   Judge --
24              THE COURT:  Okay.
25              MR. PROFITA:  -- with respect to adverse
```

1  possession.
2              THE COURT:  All right.
3              MR. PROFITA:  The second ground, Judge, is
4  that the West Shore strip which your Honor found did
5  exist, and your Honor does find that the strip is
6  measured by the low water mark, the natural mark at
7  1423.5 feet above sea level and the high water mark at
8  1425.9 feet above sea level, and I think it's just a
9  matter of error where it's referred to as having a width
10 of 2.4 feet.  That will be true, let's say, if there
11 were a sea wall on one portion, the actual width would
12 be the distance between the two.
13             If there were a sloping area, a swampy area,
14 as your Honor I'm sure remembers exists on the western
15 shore, the difference in elevation of water of 2.4 feet
16 can spread quite far.
17             THE COURT:  If I said 2.4 feet above sea
18 level would that resolve your concern?
19             MR. PROFITA:  I think, Judge, it's a -- it's
20 just a matter of saying that the width is 2.4 feet --
21 that the strip is 2.4 feet in width.
22             THE COURT:  No, I understand that.
23             MR. PROFITA:  It's really the -- it's the
24 land that lies between --
25             THE COURT:  Right.

```
 1                MR. PROFITA:  -- the water when it's at an
 2   elevation of 1423.5 feet above sea level and the edge of
 3   the water when it's at an elevation of 1425.9 feet above
 4   sea level.
 5                THE COURT:  So that difference would be 2.4
 6   feet above sea level?
 7                MR. PROFITA:  Correct, Judge.
 8                THE COURT:  So if I said above sea level to
 9   the 2. -- in other words, I understand your argument,
10   that it's the 2.4 feet which would seem to be static as
11   opposed to relating it to sea level or high water mark,
12   would that be right?
13                MR. PROFITA:  Yeah, it changes.  The
14   distance of the width --
15                THE COURT:  Well, it changes, but --
16                MR. PROFITA:  -- of the strip changes
17   depending upon --
18                THE COURT:  But sea level -- but sea level
19   is the thing that reconciles it all, isn't it?
20                MR. PROFITA:  Well, it's the -- if you
21   describe it as the land lying between --
22                THE COURT:  That's what I mean.
23                MR. PROFITA:  -- the edge of the water at a
24   different sea level elevation, that's correct, sure.
25                THE COURT:  Okay, all right, thank you.
```

1               MR. PROFITA:  Thank you, Judge.
2               THE COURT:  Mr. O'Brien.
3               MR. O'BRIEN:  Yes, your Honor.  Thank you.
4    Your Honor, on the issue of the amendment of judgment on
5    the issue of record of title we would ask -- we would
6    submit that the court's original judgment was the best
7    type of -- the best way to do this.  I think the
8    judgments as to real property are very important because
9    they are looked at by a lot of different people.  They
10   are looked at by title searchers; they're looked at by
11   Realtors; they're looked at by lawyers.  And to put in
12   an order that they did not prove record of title but
13   that they did prove title would just be confusing.
14              In this case at the first count of our
15   complaint we didn't use the word record of title because
16   we're entitled to it.  And the court found that we had
17   title to 1423.5 and that we had adverse possession from
18   1423.5 to 1425.9, and to amend the order, to put in
19   there that we do not have record of title is just going
20   to create confusion down the way.  And I think that the
21   Court's decision was accurate, and its judgment was
22   accurate.  We have title to that land.  They have the
23   ability to challenge that.  We don't think that the
24   amendment of the order on the issue to use record of
25   title to say in one section of an order it may mean

1  something to the Court and to the people in this case,
2  but it could create confusion down the record to have an
3  order that says you don't have record of title, whatever
4  that means, but you do have title.  And I think that
5  it's clear from the court's decision that we have title
6  to a certain point and that we have an easement above
7  that.  That's sufficient for the parties.  It's
8  certainly clear for all those people who may look at it
9  in the future.
10           THE COURT:  What about Mr. Profita's
11 argument that you -- that you may not -- you're not
12 precluded from contesting in court the question of
13 whether or not you've proved title by deed?
14           MR. O'BRIEN:  Well, I'm not so sure that
15 that would apply here.  But let's even assume it does,
16 my understanding of the law in Pennsylvania, if you
17 issue preclusion is that it covers all issues that were
18 raised in the case, not just an issue that may have been
19 set forth in the final paragraph.  And if someone were
20 actually to raise that, they could look at this record,
21 and if that's the case they could reach that
22 determination.  I don't think -- I don't think that the
23 issue of preclusion is such a narrow concept that it
24 only applies to that.  It applies to any issue raised
25 and any issue that could have been raised in the case as

1  I understand.
2           THE COURT:  Okay.
3           MR. O'BRIEN:  The second point, your Honor,
4  is as to the question of the width of the strip.  Your
5  Honor, we view the court's decision as the court
6  attempting to put some type of specificity into very
7  ambiguous evidence.  The court will recall that
8  originally there was in dispute the question of whether
9  or not there was a strip, and there was testimony going
10 both ways on that issue.
11          There was also in dispute how you define the
12 strip, how wide the strip was.  And I think that the
13 verdict of the court in this case decided that there was
14 a strip, and that the best evidence was I think in the
15 court's opinion was that it was that the 2.4 feet was
16 the -- a finding that was based on the best evidence
17 available to the court.
18          I also note that the plaintiff in this case
19 had an opportunity, they had a surveyor who could have
20 submitted into court a survey that showed a metes and
21 bounds description of this strip and they didn't do so.
22 There was a survey, but there was no metes and bounds
23 description.  It was just a map that showed here's where
24 the strip is.  So with that in mind, Judge, I think that
25 the -- again, this involves real estate, and you want

1  some type of finality, you want some type of description
2  that a future Realtor or lawyer or title searcher can
3  rely on.  And in saying it's between this level and that
4  level of sea level I don't think is a sufficient
5  description.  2.4 feet is.
6              THE COURT:  But as I asked Mr. Profita, 2.4
7  feet, if it said 2.4 feet above sea level --
8              MR. O'BRIEN:  I think that would be even
9  more confusing.
10              THE COURT:  Why would that be?
11              MR. O'BRIEN:  Well, how would that be
12  understood, 2.4 feet above sea level?
13              THE COURT:  Because -- because the two
14  levels of the lake and pond are described in terms of
15  1423.5 and 1425.9 above sea level in each instance, in
16  all the papers and all the documents that I've ever
17  seen.
18              MR. O'BRIEN:  Well, the contract radius
19  documents, your Honor, talk about the difference between
20  the high water mark and the margin of the flow and
21  things like this, so I don't think that -- if you look
22  at anything contemporaneous, there's no -- as the court
23  pointed out in its opinion, there's absolutely no
24  evidence as to how wide this strip was.  And I think it
25  would be confusing to say that the strip was between two

1  levels -- it was between where the water lay at 1425
2  feet above sea level and where it lay at 1429 feet above
3  sea level.  That is property that somebody can't locate.
4  I think the idea of a property description is you've got
5  to describe it in such a way -- the case law says it
6  should be described in such a way that someone, a
7  Realtor or somebody can go out and locate it, or
8  something like that.  It's just -- I don't think it's
9  locatable.  I think the best description is what the
10 court did, and it's 2.4 feet.  We know -- there's a lot
11 of records where the Dring and the Asaro property ends.
12 And now they have a strip that is 2.4 feet in from the
13 lake.  And I think that was a fair and appropriate --
14            THE COURT:  No, I didn't decide that.  I
15 decided you had a strip of 2.4 feet.  They may have a
16 strip that's greater.  I don't really know that, and I
17 avoided deciding that because it wasn't before me.
18 Because there was some evidence as I recall that there
19 was a higher level back somewhere in the past, and I --
20 there wasn't enough evidence as I understood it to make
21 a determination.  Moreover, I didn't have to decide
22 that.  I only had to decide what was it that you had
23 acquired.
24            MR. O'BRIEN:  I don't think I understand
25 you, Judge.  I'm looking at your opinion.  "I have

```
 1  determined that the reservation or strip owned by
 2  Asaro/Dring is established at at least 2.4" --
 3              THE COURT:  "At least", right, okay.
 4              MR. O'BRIEN:  I think it was a good
 5  decision.
 6              THE COURT:  All right.  Anything else?
 7              MR. PROFITA:  Just briefly, Judge.
 8              THE COURT:  Sure.
 9              MR. PROFITA:  I kind of find it difficult to
10  reconcile Mr. O'Brien's problem with having the strip,
11  the boundaries of the strip defined by reference to two
12  differing elevations above sea level, when in fact the
13  boundary of his client's property as determined by your
14  Honor is the same two boundaries.  So he failed to prove
15  the boundary of his property by deed, and your Honor has
16  found that the boundary should be established with
17  reference to the elevation line with respect to
18  ownership and another elevation line with respect to
19  descriptive easement.
20              So I don't see what the difficulty or
21  confusion is with defining the configuration of the
22  strip by reference to the difference -- the land line
23  between the natural water elevation line and the higher.
24  And that is on page ten of your memorandum decision,
25  Judge, you state that -- you find that it's -- that the
```

1  strip itself is described as the land lying between the
2  natural and highest flows of water to west.  So, I don't
3  think there's anything confusing about it at all, Judge.
4  I think it's just a matter that in fact it's not 2.4
5  feet in width, at one spot it might be, but it's not
6  that in width everywhere else.
7         And Judge, there was testimony by Mr.
8  Schoenagel and it was also admitted into evidence
9  DT-51E, Judge, which was a survey of the lands of
10 Dring/Asaro, the two Swingle parcels here and here with
11 the 1423 elevation line established and searched.  In
12 our proposed findings we had included a description of
13 that entire tract to include the reservation with the
14 uplands owned by the Swingles, and this was
15 uncontroverted, Judge, they did not have any
16 countervailing testimony by a surveyor.  So it was
17 submitted by a metes and bounds description as part of
18 the tract that lies immediately above the strip.
19         THE COURT:  Let me go back -- let me just
20 revisit one thing with you.  And that's the first point,
21 the one about the record of title.  And your concern
22 is -- your only concern is that there may be some
23 ability to bring some action to establish record of
24 title?
25         MR. PROFITA:  Yes, Judge.  Basically --

```
 1              THE COURT:  Why would anybody want to do
 2   that, given the fact that they have title by the devices
 3   which I indicated they had title by?
 4              MR. PROFITA:  Well, that could change,
 5   Judge.  And it's our position that they alleged title by
 6   deed.
 7              THE COURT:  No, I understand what you've
 8   said.
 9              MR. PROFITA:  They allege title by deed, and
10   they failed to prove it.
11              THE COURT:  Right.
12              MR. PROFITA:  That to me, Judge, entitles us
13   to judgment on that count which has a preclusive effect.
14   And rather than have to rely upon your Honor's opinion
15   and proof of collateral estoppel and different parties
16   or whatever, after eight years of litigation on the
17   issue of whether they have a deed that gives them the
18   property or not, I think we're entitled to that
19   judgment, Judge.
20              THE COURT:  All right, I understand.  Do you
21   want to say something?
22              MR. O'BRIEN:  Judge, on Mr. Profita's point
23   that we're satisfied with a description of the lake at a
24   certain level above sea level and we should be satisfied
25   with the description of the strip, I think the
```

```
 1   difference is that the lake is a geological fact that
 2   you can observe.  Someone can find the lake.  The water
 3   is where it is, the water is where it is in the summer,
 4   it's where it is in the winter, and that property can be
 5   located.  And I don't think that that's the case with
 6   this strip that is located under the water.
 7              THE COURT:  All right.  Anything else?
 8              MR. PROFITA:  No, thank you, Judge.
 9              THE COURT:  All right.  Thank you both.  I
10   appreciate it.  It helps.  Thank you.
11              MR. PROFITA:  Thank you, Judge.
12                  (1:51 p.m., court adjourned.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

REPORTER'S CERTIFICATE

I, DIANA L. GILBRIDE, Official Court Reporter for the United States District Court for the Middle District of Pennsylvania, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the within-mentioned proceedings had in the above-mentioned and numbered cause on the date or dates hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my supervision.

                                        _____
                                        Diana L. Gilbride, RMR, FCRR
                                        Official Court Reporter

REPORTED BY:

   DIANA L. GILBRIDE, RPR
   Official Court Reporter
   United States District Court
   Middle District of Pennsylvania
   P.O. Box G
   Scranton, PA  18501-0090

     (The foregoing certificate of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)

| **0** | **acquired** [1] - 10:23<br>**act** [1] - 3:1<br>**action** [2] - 3:12, 12:23<br>**actual** [1] - 4:11<br>**adjourned** [1] - 14:12<br>**admitted** [1] - 12:8<br>**adverse** [4] - 3:6, 3:7, 3:25, 6:17<br>**afternoon** [1] - 2:13<br>**al** [2] - 1:3, 1:7<br>**allegation** [2] - 2:22, 3:20<br>**allege** [1] - 13:9<br>**alleged** [1] - 13:5<br>**ALO** [3] - 2:19, 3:2, 3:21<br>**ambiguous** [1] - 8:7<br>**amend** [1] - 6:18<br>**amended** [4] - 2:16, 2:18, 2:21, 3:20<br>**amendment** [2] - 6:4, 6:24<br>**APPEARANCES** [1] - 1:16<br>**appearing** [1] - 2:11<br>**applies** [2] - 7:24<br>**apply** [2] - 7:15, 15:22<br>**appointed** [1] - 15:5<br>**appreciate** [1] - 14:10<br>**appropriate** [1] - 10:13<br>**area** [2] - 4:13<br>**argument** [3] - 2:3, 5:9, 7:11<br>**Argument** [1] - 1:12<br>**Ariel** [2] - 1:3, 2:19<br>**Asaro** [2] - 3:4, 10:11<br>**Asaro/Dring** [1] - 11:2<br>**Assaro** [1] - 2:12<br>**Associates** [1] - 1:21<br>**assume** [1] - 7:15<br>**attempting** [1] - 8:6<br>**available** [1] - 8:17<br>**Avenue** [1] - 1:21<br>**avoided** [1] - 10:17 | 8:14, 8:16, 10:9<br>**between** [9] - 4:12, 4:24, 5:21, 9:3, 9:19, 9:25, 10:1, 11:23, 12:1<br>**boundaries** [2] - 11:11, 11:14<br>**boundary** [3] - 11:13, 11:15, 11:16<br>**bounds** [3] - 8:21, 8:22, 12:17<br>**Box** [1] - 15:20<br>**brief** [1] - 3:14<br>**briefly** [1] - 11:7<br>**bring** [1] - 12:23<br>**BY** [1] - 15:17 | **constitute** [1] - 3:14<br>**contains** [1] - 3:15<br>**contemporaneous** [1] - 9:22<br>**contesting** [1] - 7:12<br>**contract** [1] - 9:18<br>**control** [1] - 15:23<br>**convene** [1] - 2:1<br>**correct** [2] - 5:24, 15:7<br>**Correct** [3] - 3:8, 3:13, 5:7<br>**Count** [3] - 2:17, 2:21, 3:20<br>**count** [2] - 6:14, 13:13<br>**countervailing** [1] - 12:16<br>**COURT** [34] - 1:1, 2:2, 2:6, 2:10, 3:5, 3:9, 3:24, 4:2, 4:17, 4:22, 4:25, 5:5, 5:8, 5:15, 5:18, 5:22, 5:25, 6:2, 7:10, 8:2, 9:6, 9:10, 9:13, 10:14, 11:3, 11:6, 11:8, 12:19, 13:1, 13:7, 13:11, 13:20, 14:7, 14:9<br>**court** [10] - 6:16, 7:12, 8:5, 8:7, 8:13, 8:17, 8:20, 9:22, 10:10, 14:12<br>**Court** [6] - 7:1, 15:3, 15:4, 15:16, 15:18, 15:19<br>**court's** [4] - 6:6, 7:5, 8:5, 8:15<br>**Court's** [1] - 6:21<br>**covers** [1] - 7:17<br>**create** [2] - 6:20, 7:2 | 1:20, 2:12<br>**define** [1] - 8:11<br>**defined** [1] - 11:11<br>**defining** [1] - 11:21<br>**describe** [2] - 5:21, 10:5<br>**described** [3] - 9:14, 10:6, 12:1<br>**description** [10] - 8:21, 8:23, 9:1, 9:5, 10:4, 10:9, 12:12, 12:17, 13:23, 13:25<br>**descriptive** [1] - 11:19<br>**determination** [2] - 7:22, 10:21<br>**determined** [2] - 11:1, 11:13<br>**devices** [1] - 13:2<br>**DIANA** [2] - 15:3, 15:18<br>**Diana** [1] - 15:15<br>**difference** [5] - 4:15, 5:5, 9:19, 11:22, 14:1<br>**different** [3] - 5:24, 6:9, 13:15<br>**differing** [1] - 11:12<br>**difficult** [1] - 11:9<br>**difficulty** [1] - 11:20<br>**direct** [1] - 15:23<br>**dispute** [2] - 8:8, 8:11<br>**distance** [2] - 4:12, 5:14<br>**DISTRICT** [2] - 1:1, 1:1<br>**District** [4] - 15:4, 15:19, 15:19<br>**documents** [2] - 9:16, 9:19<br>**down** [2] - 6:20, 7:2<br>**Dring** [4] - 1:7, 2:12, 3:4, 10:11<br>**Dring/Asaro** [1] - 12:10<br>**DT-51E** [1] - 12:9 |
| **07631** [1] - 1:22 | | | | |
| **1** | | | **D** | |
| **1** [3] - 2:17, 2:21, 3:20<br>**106** [1] - 1:21<br>**1212** [1] - 1:19<br>**1423** [1] - 12:11<br>**1423.5** [5] - 4:7, 5:2, 6:17, 6:18, 9:15<br>**1425** [1] - 10:1<br>**1425.9** [5] - 2:23, 4:8, 5:3, 6:18, 9:15<br>**1429** [1] - 10:2<br>**15** [1] - 1:24<br>**18411** [1] - 1:19<br>**18501-0090** [1] - 15:20<br>**18711** [1] - 1:24<br>**1:35** [1] - 2:1<br>**1:51** [1] - 14:12 | | **C** | | |
| | | **Caputo** [1] - 1:10<br>**case** [9] - 6:14, 7:1, 7:18, 7:21, 7:25, 8:13, 8:18, 10:5, 14:5<br>**certain** [2] - 7:6, 13:24<br>**certainly** [1] - 7:8<br>**CERTIFICATE** [1] - 15:1<br>**certificate** [1] - 15:22<br>**certify** [2] - 15:7, 15:10<br>**certifying** [1] - 15:23<br>**challenge** [1] - 6:23<br>**change** [1] - 13:4<br>**changes** [3] - 5:13, 5:15, 5:16<br>**claim** [1] - 3:21<br>**claiming** [1] - 3:3<br>**Clarks** [1] - 1:19<br>**clear** [2] - 7:5, 7:8<br>**client's** [1] - 11:13<br>**Code** [1] - 15:6<br>**collateral** [1] - 13:15<br>**combination** [1] - 3:7<br>**complaint** [5] - 2:18, 2:21, 2:22, 3:20, 6:15<br>**concept** [1] - 7:23<br>**concern** [3] - 4:18, 12:21, 12:22<br>**concerned** [1] - 3:9<br>**conclusions** [1] - 3:16<br>**configuration** [1] - 11:21<br>**confusing** [4] - 6:13, 9:9, 9:25, 12:3<br>**confusion** [3] - 6:20, 7:2, 11:21 | **DATE** [1] - 1:14<br>**date** [1] - 15:9<br>**dates** [1] - 15:10<br>**decide** [3] - 10:14, 10:21, 10:22<br>**decided** [2] - 8:13, 10:15<br>**deciding** [1] - 10:17<br>**decision** [5] - 6:21, 7:5, 8:5, 11:5, 11:24<br>**deed** [6] - 2:24, 7:13, 11:15, 13:6, 13:9, 13:17<br>**defendants** [1] - 2:17<br>**Defendants** [3] - 1:7, | |
| **2** | | | | **E** |
| **2** [1] - 5:9<br>**2.4** [17] - 4:10, 4:15, 4:17, 4:20, 4:21, 5:5, 5:10, 8:15, 9:5, 9:6, 9:7, 9:12, 10:10, 10:12, 10:15, 11:2, 12:4<br>**2008** [1] - 1:14<br>**28** [2] - 1:14, 15:6 | | | | **easement** [3] - 3:7, 7:6, 11:19<br>**edge** [2] - 5:2, 5:23<br>**effect** [2] - 3:18, 13:13<br>**eight** [1] - 13:16<br>**elevation** [9] - 2:23, 4:15, 5:2, 5:3, 5:24, 11:17, 11:18, 11:23, 12:11 |
| **3** | | | | |
| **3:01-CV-00294** [1] - 1:5 | | | | |
| **7** | **B** | | | |
| **753** [1] - 15:6 | **Barre** [2] - 1:11, 1:24<br>**based** [2] - 2:14, 8:16<br>**BEFORE** [1] - 1:10<br>**behalf** [1] - 2:12<br>**best** [5] - 6:6, 6:7, | | | |
| **A** | | | | |
| **ability** [2] - 6:23, 12:23<br>**Abington** [1] - 1:19<br>**above-mentioned** [1] - 15:9<br>**absolutely** [1] - 9:23<br>**accurate** [2] - 6:21, 6:22 | | | | |

**elevations** [1] - 11:12
**ends** [1] - 10:11
**Englewood** [1] - 1:22
**enter** [1] - 3:10
**entered** [2] - 2:16, 2:17
**entire** [1] - 12:13
**entitled** [3] - 2:25, 6:16, 13:18
**entitles** [1] - 13:12
**error** [1] - 4:9
**Esq** [4] - 1:17, 1:18, 1:20, 1:23
**establish** [1] - 12:23
**established** [3] - 11:2, 11:16, 12:11
**estate** [1] - 8:25
**estoppel** [1] - 13:15
**et** [2] - 1:3, 1:7
**everywhere** [1] - 12:6
**evidence** [7] - 8:7, 8:14, 8:16, 9:24, 10:18, 10:20, 12:8
**exist** [1] - 4:5
**exists** [1] - 4:14

**F**

**fact** [6] - 3:10, 3:15, 11:12, 12:4, 13:2, 14:1
**failed** [4] - 2:25, 3:19, 11:14, 13:10
**fair** [1] - 10:13
**far** [1] - 4:16
**favor** [1] - 2:17
**FCRR** [1] - 15:15
**feet** [23] - 2:23, 4:7, 4:8, 4:10, 4:15, 4:17, 4:20, 4:21, 5:2, 5:3, 5:6, 5:10, 8:15, 9:5, 9:7, 9:12, 10:2, 10:10, 10:12, 10:15, 12:5
**filed** [1] - 2:13
**final** [1] - 7:19
**finality** [1] - 9:1
**finally** [1] - 3:16
**findings** [2] - 3:15, 12:12
**fine** [1] - 2:8
**first** [3] - 2:14, 6:14, 12:20
**fixes** [1] - 3:16
**flow** [1] - 9:20
**flows** [1] - 12:2
**FOR** [1] - 1:1

**foreclose** [2] - 3:2, 3:21
**foregoing** [3] - 15:7, 15:11, 15:22
**forth** [2] - 7:19, 15:10
**Franklin** [1] - 1:24
**future** [4] - 3:2, 3:21, 7:9, 9:2

**G**

**Garry** [1] - 1:23
**geological** [1] - 14:1
**GILBRIDE** [2] - 15:3, 15:18
**Gilbride** [1] - 15:15
**given** [1] - 13:2
**Grande** [1] - 1:21
**greater** [1] - 10:16
**Greenwald** [1] - 1:23
**ground** [2] - 2:14, 4:3
**grounds** [1] - 2:14

**H**

**held** [1] - 2:22
**helps** [1] - 14:10
**hereby** [1] - 15:6
**hereinbefore** [1] - 15:10
**high** [3] - 4:7, 5:11, 9:20
**higher** [2] - 10:19, 11:23
**highest** [1] - 12:2
**Honor** [11] - 2:18, 4:4, 4:5, 4:14, 6:3, 6:4, 8:3, 8:5, 9:19, 11:14, 11:15
**Honor's** [1] - 13:14
**Honorable** [1] - 1:10
**Huss** [1] - 2:24

**I**

**idea** [1] - 10:4
**immediately** [1] - 12:18
**important** [1] - 6:8
**IN** [1] - 1:1
**include** [1] - 12:13
**included** [1] - 12:12
**indicated** [1] - 13:3
**instance** [1] - 9:15
**involves** [1] - 8:25
**issue** [11] - 3:11, 6:4, 6:5, 6:24, 7:17, 7:18,

7:23, 7:24, 7:25, 8:10, 13:17
**issues** [1] - 7:17
**itself** [1] - 12:1

**J**

**Jenkins** [1] - 1:23
**Joseph** [1] - 1:17
**Judge** [25] - 2:5, 2:8, 2:13, 3:8, 3:13, 3:23, 4:3, 4:19, 5:7, 6:1, 8:24, 10:25, 11:7, 11:25, 12:3, 12:7, 12:9, 12:15, 12:25, 13:5, 13:12, 13:19, 13:22, 14:8, 14:11
**judgment** [11] - 2:15, 2:16, 3:1, 3:10, 3:15, 3:16, 6:4, 6:6, 6:21, 13:13, 13:19
**judgments** [1] - 6:8
**judicata** [1] - 3:2
**July** [1] - 1:14

**K**

**Karoline** [1] - 1:18
**kind** [1] - 11:9

**L**

**Lake** [1] - 2:19
**lake** [5] - 9:14, 10:13, 13:23, 14:1, 14:2
**land** [5] - 4:24, 5:21, 6:22, 11:22, 12:1
**Land** [1] - 1:3
**lands** [1] - 12:9
**law** [3] - 3:16, 7:16, 10:5
**lawyer** [1] - 9:2
**lawyers** [1] - 6:11
**lay** [2] - 10:1, 10:2
**least** [2] - 11:2, 11:3
**level** [24] - 2:23, 4:7, 4:8, 4:18, 5:2, 5:4, 5:6, 5:8, 5:11, 5:18, 5:24, 9:3, 9:4, 9:7, 9:12, 9:15, 10:2, 10:3, 10:19, 11:12, 13:24
**levels** [2] - 9:14, 10:1
**lies** [2] - 4:24, 12:18
**line** [5] - 11:17, 11:18, 11:22, 11:23, 12:11
**litigation** [2] - 3:2, 13:16

**LLP** [1] - 1:23
**locatable** [1] - 10:9
**locate** [2] - 10:3, 10:7
**located** [2] - 14:5, 14:6
**look** [3] - 7:8, 7:20, 9:21
**looked** [4] - 6:9, 6:10, 6:11
**looking** [1] - 10:25
**Lori** [2] - 1:7, 2:12
**low** [1] - 4:6
**lying** [2] - 5:21, 12:1

**M**

**map** [1] - 8:23
**margin** [1] - 9:20
**mark** [5] - 4:6, 4:7, 5:11, 9:20
**matter** [4] - 2:16, 4:9, 4:20, 12:4
**mean** [2] - 5:22, 6:25
**means** [2] - 7:4, 15:23
**measured** [1] - 4:6
**Mehalchick** [1] - 1:18
**memorandum** [1] - 11:24
**mentioned** [2] - 15:8, 15:9
**metes** [3] - 8:20, 8:22, 12:17
**Michael** [2] - 1:20, 2:11
**Middle** [2] - 15:4, 15:19
**MIDDLE** [1] - 1:1
**might** [1] - 12:5
**mind** [1] - 8:24
**Monday** [1] - 1:14
**Moreover** [1] - 10:21
**motion** [2] - 2:2, 2:13
**Motion** [1] - 1:13
**MR** [33] - 2:5, 2:8, 2:11, 3:8, 3:13, 3:25, 4:3, 4:19, 4:23, 5:1, 5:7, 5:13, 5:16, 5:20, 5:23, 6:1, 6:3, 7:14, 8:3, 9:8, 9:11, 9:18, 10:24, 11:4, 11:7, 11:9, 12:25, 13:4, 13:9, 13:12, 13:22, 14:8, 14:11
**Mud** [1] - 2:19

**N**

**Nancy** [1] - 2:12
**narrow** [1] - 7:23
**natural** [3] - 4:6, 11:23, 12:2
**Nice** [1] - 2:6
**NJ** [1] - 1:22
**note** [1] - 8:18
**numbered** [1] - 15:9

**O**

**O'BRIEN** [9] - 6:3, 7:14, 8:3, 9:8, 9:11, 9:18, 10:24, 11:4, 13:22
**O'Brien** [2] - 1:17, 6:2
**O'Brien's** [1] - 11:10
**observe** [1] - 14:2
**OF** [1] - 1:1
**Official** [3] - 15:3, 15:16, 15:18
**Oliver** [1] - 1:18
**one** [5] - 4:11, 6:25, 12:5, 12:20, 12:21
**opinion** [5] - 3:14, 8:15, 9:23, 10:25, 13:14
**opportunity** [1] - 8:19
**opposed** [1] - 5:11
**oral** [1] - 2:3
**Oral** [1] - 1:12
**order** [6] - 3:18, 6:12, 6:18, 6:24, 6:25, 7:3
**original** [1] - 6:6
**originally** [1] - 8:8
**owned** [2] - 11:1, 12:14
**Owners** [1] - 1:3
**ownership** [1] - 11:18

**P**

**p.m** [2] - 2:1, 14:12
**P.O** [1] - 15:20
**PA** [3] - 1:19, 1:24, 15:20
**page** [1] - 11:24
**papers** [1] - 9:16
**paragraph** [1] - 7:19
**parcels** [1] - 12:10
**part** [1] - 12:17
**parties** [3] - 3:17,

7:7, 13:15
**past** [1] - 10:19
**PENNSYLVANIA** [1] - 1:1
**Pennsylvania** [4] - 1:11, 7:16, 15:5, 15:19
**people** [3] - 6:9, 7:1, 7:8
**PLACE** [1] - 1:11
**plaintiff** [1] - 8:18
**Plaintiff** [1] - 1:17
**Plaintiffs** [1] - 1:3
**point** [5] - 3:13, 7:6, 8:3, 12:20, 13:22
**pointed** [1] - 9:23
**Pond** [1] - 2:20
**pond** [1] - 9:14
**portion** [1] - 4:11
**position** [3] - 2:24, 3:17, 13:5
**possession** [4] - 3:6, 3:7, 4:1, 6:17
**precluded** [1] - 7:12
**preclusion** [2] - 7:17, 7:23
**preclusive** [2] - 3:18, 13:13
**prepared** [1] - 15:11
**Price** [1] - 1:18
**problem** [1] - 11:10
**proceedings** [1] - 15:8
**PROCEEDINGS** [1] - 1:12
**PROFITA** [24] - 2:5, 2:8, 2:11, 3:8, 3:13, 3:25, 4:3, 4:19, 4:23, 5:1, 5:7, 5:13, 5:16, 5:20, 5:23, 6:1, 11:7, 11:9, 12:25, 13:4, 13:9, 13:12, 14:8, 14:11
**Profita** [4] - 1:20, 1:21, 2:11, 9:6
**Profita's** [2] - 7:10, 13:22
**proof** [1] - 13:15
**property** [8] - 6:8, 10:3, 10:4, 10:11, 11:13, 11:15, 13:18, 14:4
**proposed** [1] - 12:12
**prove** [7] - 2:19, 2:25, 3:19, 6:12, 6:13, 11:14, 13:10
**proved** [1] - 7:13
**provisions** [1] - 15:5
**pursuant** [1] - 15:5
**pursue** [1] - 3:12

**put** [3] - 6:11, 6:18, 8:6

**Q**

**quite** [1] - 4:16

**R**

**radius** [1] - 9:18
**raise** [1] - 7:20
**raised** [3] - 7:18, 7:24, 7:25
**rather** [1] - 13:14
**reach** [1] - 7:21
**ready** [1] - 2:4
**real** [2] - 6:8, 8:25
**really** [2] - 4:23, 10:16
**Realtor** [2] - 9:2, 10:7
**Realtors** [1] - 6:11
**reconcile** [1] - 11:10
**reconciles** [1] - 5:19
**reconsider** [1] - 2:14
**Reconsideration** [1] - 1:13
**reconsideration** [1] - 2:3
**record** [15] - 2:19, 3:3, 3:11, 3:12, 3:19, 6:5, 6:12, 6:15, 6:19, 6:24, 7:2, 7:3, 7:20, 12:21, 12:23
**records** [1] - 10:11
**reference** [3] - 11:11, 11:17, 11:22
**referred** [1] - 4:9
**reflect** [1] - 3:1
**regarding** [1] - 3:12
**regardless** [1] - 3:22
**relating** [1] - 5:11
**rely** [2] - 9:3, 13:14
**remembers** [1] - 4:14
**REPORTED** [1] - 15:17
**Reporter** [3] - 15:3, 15:16, 15:18
**reporter** [1] - 15:23
**REPORTER'S** [1] - 15:1
**reproduction** [1] - 15:22
**requesting** [1] - 2:15
**res** [1] - 3:1
**reservation** [2] - 11:1, 12:13
**resolve** [1] - 4:18

**respect** [3] - 3:25, 11:17, 11:18
**respective** [1] - 3:17
**revisit** [1] - 12:20
**Rhodes** [1] - 1:18
**Richard** [1] - 1:10
**rights** [1] - 3:17
**RMR** [1] - 15:15
**Road** [1] - 1:19
**Rosenn** [1] - 1:23
**RPR** [1] - 15:18

**S**

**satisfied** [2] - 13:23, 13:24
**Schoenagel** [1] - 12:8
**Schrader** [1] - 2:24
**Scranton** [1] - 15:20
**sea** [21] - 2:23, 4:7, 4:8, 4:11, 4:17, 5:2, 5:4, 5:6, 5:8, 5:11, 5:18, 5:24, 9:4, 9:7, 9:12, 9:15, 10:2, 10:3, 11:12, 13:24
**searched** [1] - 12:11
**searcher** [1] - 9:2
**searchers** [1] - 6:10
**second** [2] - 4:3, 8:3
**section** [1] - 6:25
**Section** [1] - 15:6
**see** [2] - 2:6, 11:20
**seem** [1] - 5:10
**set** [2] - 7:19, 15:10
**Shore** [1] - 4:4
**shore** [1] - 4:15
**showed** [2] - 8:20, 8:23
**sloping** [1] - 4:13
**Someone** [1] - 14:2
**someone** [2] - 7:19, 10:6
**somewhere** [1] - 10:19
**South** [2] - 1:19, 1:24
**specifically** [1] - 2:18
**specificity** [1] - 8:6
**spot** [1] - 12:5
**spread** [1] - 4:16
**state** [1] - 11:25
**STATES** [1] - 1:1
**States** [3] - 15:4, 15:6, 15:19
**static** [1] - 5:10
**still** [1] - 3:12
**Street** [1] - 1:24
**strip** [24] - 4:4, 4:5,

4:21, 5:16, 8:4, 8:9, 8:12, 8:14, 8:21, 8:24, 9:24, 9:25, 10:12, 10:15, 10:16, 11:1, 11:10, 11:11, 11:22, 12:1, 12:18, 13:25, 14:6
**submit** [1] - 6:6
**submitted** [2] - 8:20, 12:17
**successors** [2] - 3:3, 3:22
**sufficient** [2] - 7:7, 9:4
**summer** [1] - 14:3
**Summit** [1] - 1:19
**supervision** [2] - 15:12, 15:23
**survey** [3] - 8:20, 8:22, 12:9
**surveyor** [2] - 8:19, 12:16
**swampy** [1] - 4:13
**Swingle** [1] - 12:10
**Swingles** [1] - 12:14

**T**

**Taroli** [1] - 1:23
**ten** [1] - 11:24
**terms** [1] - 9:14
**testimony** [3] - 8:9, 12:7, 12:16
**THE** [35] - 1:1, 1:1, 2:2, 2:6, 2:10, 3:5, 3:9, 3:24, 4:2, 4:17, 4:22, 4:25, 5:5, 5:8, 5:15, 5:18, 5:22, 5:25, 6:2, 7:10, 8:2, 9:6, 9:10, 9:13, 10:14, 11:3, 11:6, 11:8, 12:19, 13:1, 13:7, 13:11, 13:20, 14:7, 14:9
**therefore** [1] - 3:1
**Title** [1] - 15:6
**title** [27] - 2:19, 2:22, 3:3, 3:6, 3:11, 3:12, 3:19, 6:5, 6:10, 6:12, 6:13, 6:15, 6:17, 6:19, 6:22, 6:25, 7:3, 7:4, 7:5, 7:13, 9:2, 12:21, 12:24, 13:2, 13:3, 13:5, 13:9
**tract** [2] - 12:13, 12:18
**transcript** [3] - 15:8, 15:11, 15:22
**true** [2] - 4:10, 15:7

**two** [7] - 2:14, 4:12, 9:13, 9:25, 11:11, 11:14, 12:10
**type** [4] - 6:7, 8:6, 9:1

**U**

**uncontroverted** [1] - 12:15
**under** [3] - 14:6, 15:12, 15:23
**understood** [2] - 9:12, 10:20
**UNITED** [1] - 1:1
**United** [3] - 15:4, 15:6, 15:19
**unless** [1] - 15:23
**up** [1] - 2:22
**uplands** [1] - 12:14

**V**

**verdict** [1] - 8:13
**view** [1] - 8:5
**virtue** [2] - 2:23, 3:6
**vs** [1] - 1:5

**W**

**wall** [1] - 4:11
**water** [14] - 4:6, 4:7, 4:15, 5:1, 5:3, 5:11, 5:23, 9:20, 10:1, 11:23, 12:2, 14:2, 14:3, 14:6
**ways** [1] - 8:10
**west** [1] - 12:2
**West** [1] - 4:4
**western** [1] - 4:14
**wide** [2] - 8:12, 9:24
**width** [8] - 4:9, 4:11, 4:20, 4:21, 5:14, 8:4, 12:5, 12:6
**Wilkes** [2] - 1:11, 1:24
**Wilkes-Barre** [2] - 1:11, 1:24
**winter** [1] - 14:4
**within-mentioned** [1] - 15:8
**word** [1] - 6:15
**words** [1] - 5:9

**Y**

**years** [1] - 13:16